SHAWMUT BANK, N.A. *vs.* WILLIAM J. CHASE.

No. 91-P-1358.

Suffolk. January 14, 1993. - March 26, 1993.

Present: SMITH, FINE, & IRELAND, JJ.

Further appellate review granted, 415 Mass. 1103 (1993).

*Practice, Civil,* Default, Damages. *Judgment,* Default. *Uniform Commercial Code,* Secured creditor, Sale of collateral.

In the circumstances of a hearing on assessment of damages under Mass.R.Civ.P. 55 (b)(2), the defendant, who was defaulted for failure to file an answer, was entitled to raise issues of lack of notice and commercial unreasonableness relating to the plaintiff's sale of the assets that secured the debt that the defendant had guaranteed. [268-269]

At a hearing on assessment of damages, the defendant, the guarantor of a debt, established that the plaintiff creditor had failed to give him notice of the sale of collateral assets, in violation of the requirements of G. L. c. 106, § 9-504(3). [269-271]

In an action seeking a deficiency judgment on a debt after a sale of assets, where the creditor had failed to notify the guarantor of the debt of its sale of the collateral in accordance with the requirements of G. L. c. 106, § 9-504 (3), this court announced that there is a rebuttable presumption that the fair value of the collateral and the amount of the debt are the same and the burden is on the creditor to demonstrate that the fair value of the collateral was less than the debt; and the matter was remanded for a new hearing on the assessment of damages. [271-272]

CIVIL ACTION commenced in the Superior Court Department on July 26, 1990.

After entry of default, a proceeding for assessment of damages was heard by *Elbert Tuttle,* J.

*Charles E. Chase* for the defendant.

*Dennis E. McKenna* for the plaintiff.

FINE, J. The issue before us is the adequacy of Shawmut Bank, N.A.'s (Shawmut's), evidence to support a finding against William J. Chase after an assessment of damages hearing.

In 1987, Nappco, Inc. (Nappco), entered into a revolving loan agreement with Shawmut, secured by Nappco's assets, which consisted of inventory and accounts receivable. At the same time, Chase and one Charles W. Roche each executed an unlimited guaranty of Nappco's obligations to Shawmut. Nappco defaulted on its obligations. On July 26, 1990, Shawmut commenced this action against Chase[1] to enforce the guaranty, alleging the amount owed to be $9,545,566.80, plus interest, costs, and attorney's fees. On October 26, 1990, Chase was defaulted for failure to file an answer. Shawmut moved for entry of judgment "for a sum certain" by the clerk under Mass.R.Civ.P. 55(b)(1), 365 Mass. 822 (1974), but an assessment of damages hearing was scheduled under Mass.R.Civ.P. 55(b)(2), 365 Mass. 822-823 (1974).

At the hearing on June 26, 1991, Shawmut presented its case through Thomas Lonardo, its vice president. He produced records showing that the indebtedness amounted to $7,729,093.31, plus interest, costs, and attorney's fees. The difference between that amount and the larger amount set forth in the complaint reflected credits against the debt corresponding to the liquidation of Nappco's assets. The judgment being sought at the hearing, therefore, was a deficiency judgment. G. L. c. 106, § 9-504(2). Lonardo testified on cross-examination that the liquidation was accomplished between February and October of 1990 by Lawrence Rybecki, who had been president of Nappco. Towards the end of that period, however, Rybecki was acting under a contract with Shawmut. Lonardo stated that he was unaware of any notice to Chase relating to the sale of collateral. Cross-examination of Lonardo failed to bring out any of the details of the liquidation because he had no personal knowledge of them.

Chase asserted at the hearing that he failed to receive the required notice of the sale of assets and that the sale was not commercially reasonable. The judge invited Chase to present evidence on those issues but, over Chase's objection, placed on him the burden of proving commercial unreasonableness.

---

[1]Roche was also named as a defendant in this case but did not appeal from the judgment.

Chase thereupon testified that he served as treasurer of Nappco until he was removed in February of 1990. He stated, further, that he received no notice of the sale of any of Nappco's assets. In his opinion, Nappco's assets were worth $16,000,000 in February of 1990. When asked by the judge to explain why there was such a disparity between the value he claimed and the sale proceeds (less than $2,000,000), he answered, "I would like to know why it was that way myself."

The judge found that at least some of the collateral which was liquidated was sold by Rybecki acting for Shawmut and that Chase had received no notice of such sales. Nevertheless, the damages were assessed in the principal sum of $7,729,093.31, as requested by Shawmut, together with $987,965.34 in interest, and attorney's fees and expenses in the amount of $57,000, and judgment was entered accordingly. Chase contends on appeal that entry of judgment in that amount was improper in light of the lack of notice and the absence of evidence that the liquidation of the debtor's assets was commercially reasonable. We agree that a remand is required.

1. We must first decide whether Chase, who was in default, had the right at the assessment of damages hearing to raise the issues of lack of notice and commercial unreasonableness.

Upon default, the question of Chase's liability as guarantor was no longer open, but the amount of damages *was* open. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming,* 376 Mass. 826, 834-835 (1978). Generally, a guarantor's liability with respect to the principal sum due and interest is "for a sum certain or susceptible of mathematical calculation," *National Grange Mut. Ins. Co.* v. *Walsh,* 27 Mass. App. Ct. 155, 158 (1989), and no evidentiary hearing is required. Contrast *ibid.*; *Bissanti Design/ Build Group* v. *McClay,* 32 Mass. App. Ct. 469, 470 (1992) (where claims are not for liquidated amount, plaintiff is required to establish extent of its damages). No hearing would ordinarily be required even if the total amount of the debt

was to be reduced because of the sale of assets held as security. This is so because, in such circumstances, the amount due would still be capable of ascertainment from the bank's records. In any event, an assessment of damages hearing was required in this case because reasonable attorney's fees were to be determined. See *Ferraro* v. *Arthur M. Rosenberg Co.*, 156 F.2d 212, 214 (2d Cir. 1946); *Design & Dev., Inc.* v. *Vibromatic Mfg., Inc.*, 58 F.R.D. 71, 74 (E.D. Pa. 1973); *Combs* v. *Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474-475 (D.D.C. 1984).

We think, in the circumstances of this case, the judge could not have regarded Shawmut's damages apart from attorney's fees as being "for a sum certain" and that he properly allowed Chase to raise issues at the assessment of damages hearing relating to the propriety of the sale of the collateral. This is because, first, any issue relating to the sale of the collateral arose for the first time at the assessment of damages hearing. Shawmut's complaint set forth the amount due as $9,545,566.80, without making reference to the sale of any assets, and without taking account of any such sales in its demand. The failure to answer, therefore, could not be construed as an admission by Chase of the propriety of the sales. Further, the issues of fact and law which Chase was seeking to raise, and which had not been conceded by failure to answer the complaint, directly affected the damages to which Shawmut would be entitled. Those issues were open, therefore, for the purpose of assessing the damages. Compare *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. at 832-835, 841-843.[2]

2. We next consider whether any impropriety under the Uniform Commercial Code was established at the assessment of damages hearing.

General Laws c. 106, § 9-504(3), as appearing in St. 1979, c. 512, § 7, provides that when a secured party disposes of collateral after a debtor defaults, "every aspect of the dispo-

---

[2]We also note that Shawmut did not object to testimony bearing on notice and commercial reasonableness. The issues were tried, therefore, with the implied consent of the parties.

sition including the method, manner, time, place and terms must be commercially reasonable." Although the issue has not been expressly decided in Massachusetts,[3] and we do not need to decide it in this case, generally, where a creditor is proceeding against a debtor for a deficiency after disposing of collateral, courts place the burden of proving commercial reasonableness on the creditor. See *United States* v. *Willis*, 593 F.2d 247, 258 (6th Cir. 1979); *In re Replogle*, 929 F.2d 836, 838 (1st Cir. 1991); *Dynalectron Corp.* v. *Jack Richards Aircraft Co.*, 337 F. Supp. 659, 662 (W.D. Okla. 1972); *Kobuk Engr. & Contracting Servs., Inc.* v. *Superior Tank & Constr. Co-Alaska, Inc.*, 568 P.2d 1007, 1012 (Alaska 1977); *Henry* v. *Trickey*, 9 Ark. App. 47, 49 (1983); *John Deere Leasing Co.* v. *Fraker*, 395 N.W.2d 885, 888 (Iowa 1986); *Boatmen's Bank* v. *Dahmer*, 716 S.W.2d 876, 877-878 (Mo. Ct. App. 1986). Shawmut, having offered no evidence with respect to commercial reasonableness, did not establish at the hearing that it met its obligations. Nor did Chase, by pointing out the difference between his opinion of the value of the assets sold and the price obtained for them, make out a case of commercial unreasonableness. See *Shawmut Worcester County Bank, N.A.* v. *Miller*, 398 Mass. 273, 282 (1986); *Nadler* v. *BayBank Merrimack Valley, N.A.*, 733 F.2d 182, 184 (1st Cir. 1984); G. L. c. § 9-507(2).

In any event, G. L. c. 106, § 9-504(3), provides, in pertinent part: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,

---

[3]Compare *Shawmut Worcester County Bank, N.A.* v. *Miller*, 398 Mass. 273, 282 (1986) (where both parties submitted affidavits about the details of the sale of collateral, raising a material issue of fact for trial, summary judgment was improper). But see *In re Replogle*, 929 F.2d 836, 838 (1st Cir. 1991), in which, applying Massachusetts law, the court construed the *Shawmut Worcester County Bank* case as placing the burden of proof on a creditor in such circumstances.

if he has not signed after default a statement renouncing or modifying his right to notification of sale." As a guarantor, Chase had the same right to notice as the principal debtor. See *Shawmut Worcester County Bank, N.A.* v. *Miller*, 398 Mass. at 276-279. The judge found on undisputed evidence that Shawmut failed to give Chase such notice.

3. We next consider the consequence, with respect to the damages to which Shawmut might be entitled, of Shawmut's failure to live up to the requirements of the Uniform Commercial Code in selling Nappco's assets.

Courts in other States have used three different approaches in determining a creditor's right to damages in such situations[4]: absolute preclusion of the creditor's right to recover a deficiency judgment[5]; a rebuttable presumption that the fair value of the collateral and the amount of the debt were the same, with the burden on the creditor to show that the fair value of the collateral was less than the debt[6]; and the "set-off" theory, with the burden on the debtor to show the injury resulting from the creditor's lack of compliance with the Code.[7]

---

[4]See generally Annot., Uniform Commercial Code: Failure of Secured Creditor to Give Required Notice of Disposition of Collateral as Bar to Deficiency Judgment, 59 A.L.R.3d 401, 406 (1974); Annot., Failure of Secured Party to Make "Commercially Reasonable" Disposition of Collateral under UCC § 9-504(3) as Bar to Deficiency Judgment, 10 A.L.R.4th 413 (1981).

[5]See, for example, *Skeels v. Universal C.I.T. Credit Corp.*, 222 F. Supp. 696, 702 (W.D. Pa. 1963), rev'd in part, 335 F.2d 846 (3d Cir. 1964); *Atlas Thrift Co. v. Horan*, 27 Cal. App. 3d 999, 1009 (1972); *Stensel v. Stensel*, 63 Ill. App. 3d 639, 642-643 (1978); *Central Budget Corp. v. Garrett*, 48 A.D.2d 825 (N.Y. 1975); *Liberty Natl. Bank v. Greiner*, 62 Ohio App. 2d 125, 131 (1978).

[6]See, for example, *Norton v. National Bank of Commerce*, 240 Ark. 143, 149-150 (1966); *Universal C.I.T. Credit Co. v. Rone*, 248 Ark. 665, 669 (1970); *Mack Financial Corp. v. Scott*, 100 Idaho 889, 892 (1980); *Conti Causeway Ford v. Jarossy*, 114 N.J. Super. 382, 386 (1971); *State Bank of Burleigh County Trust Co.* v. *All-American Sub, Inc.*, 289 N.W.2d 772, 780 (N.D. 1980).

[7]See, for example, *Chapman v. Field*, 124 Ariz. 100, 104-105 (1979); *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich. App. 359, 370-371 (1974); *Jones v. Morgan*, 58 Mich. App. 455, 460 (1975); *Stanchi v. Kemp*, 48 A.D.2d 973 (N.Y. 1975); *Beneficial Fin. Co. v. Young*, 612 P.2d 1357, 1359 (Okla. 1980).

Massachusetts has rejected the forfeiture approach. *Poti Holding Co.* v. *Piggott*, 15 Mass. App. Ct. 275, 280 (1983). The issue whether Massachusetts would adopt the rebuttable presumption or the set-off approach was expressly left open in *Poti Holding Co., supra* at 280.

As between the two approaches, we think the rebuttable presumption approach, which has more widespread acceptance elsewhere, is fairer. See *In re Winer*, 39 B.R. 504, 511 (Bankr. S.D.N.Y. 1984). Generally, the facts concerning any sale of collateral are peculiarly within a creditor's knowledge, and a debtor who has not been notified of such sale would be at a disadvantage in trying to prove the extent of the resulting loss. Moreover, it seems more appropriate, and more likely to encourage compliance, to place the burden of proof on the party who failed to live up to the requirements of the Code than on the innocent party.

As we adopt the rebuttable presumption approach, a remand for a new assessment of damages in this case is necessary. On remand, there shall be a presumption that the value of the collateral sold by Shawmut was equal to the debt for which Chase is responsible as guarantor. Shawmut may be entitled to a deficiency judgment, but it will have the burden of proving that the amount of the debt exceeds the fair value of the assets sold on its behalf. One way Shawmut may establish the fair value of those assets would be by demonstrating that they were sold in a commercially reasonable manner.

Of course, no notice to Chase was required with respect to any sale of assets by Rybecki acting on behalf of Nappco, not Shawmut. As to those assets, Chase is entitled to credits against the debt only in the amount of the proceeds Shawmut received from Nappco as a result of their sale.

Accordingly, we vacate the judgment as to the amount of damages and remand the case for further proceedings on assessment of damages consistent with this opinion.

*So ordered.*