Houston, J.
Plaintiffs John and Lorraine Kaitz (the Kaitzes) bring this action to recover deficiencies on two promissory notes signed by defendants Michael and Barri Shane (the Shanes). The Kaitzes now move for partial summary judgment pursuant to Mass.R.Civ.P. 56 on the issue of the Shanes’ liability; the Shanes oppose the motion, and defendant Barri Shane files a cross-motion for summary judgment. For the reasons set forth below, the Kaitzes’ motion for partial summary judgment is ALLOWED in part and DENIED in part and defendant Barri Shane’s cross-motion for summary judgment is DENIED.
BACKGROUND
The following facts are undisputed except as otherwise indicated. In 1985, Michael Shane purchased a condominium in Newton from the Kaitzes. As part payment for the condominium, Michael Shane executed a promissory note in favor of the Kaitzes in the amount of $625,000 (the first note). The first note was secured by a first mortgage on the condominium. Between 1985 and 1988, Michael Shane made monthly payments of $25,000 in accordance with the first note’s terms and reduced the balance of the first note to $450,000.
In 1988, Michael Shane asked the Kaitzes to loan him $200,000 and extend the first note’s full payment deadline by one year. The Kaitzes granted Michael Shane’s requests. In return for a $200,000 loan and a one-year repayment extension on the first note, the Shanes executed a promissory note in favor of the Kaitzes (the second note), and Michael Shane entered into an agreement with the Kaitzes concerning the repayment terms of the first and second notes (the agreement). The second note was in the principal amount of $200,000 and was secured by a second mortgage on the condominium.[3] Although he believed that Michael Shane was creditworthy, John Kaitz insisted that Barri Shane also sign the second note because he believed that she was a timid woman who was inclined to avoid problems and because he considered it prudent to have both spouses sign the note.[4]
In the agreement, Michael Shane promised to sell the condominium no later than October 30, 1989 for a minimum sale price of $700,000. Michael Shane further promised to pay the Kaitzes the first $700,000 of the sale proceeds[5] and one-half of any proceeds in excess of $750,000. As additional collateral for payment of the notes, Michael Shane, as chairman and majority shareholder of Leading Edge Hardware Products, Inc. (LEP), promised in the agreement to sell or refinance a piece of property owned by LEP (the LEP property) in the event of any default. LEP granted the Kaitzes a covenant in which it promised not to sell or encumber the LEP property.
In or about May 1989, the Shanes defaulted on the first and second notes. In response, the Kaitzes sold the condominium to a third party for a sale price of $540,000.[6]
DISCUSSION
Having foreclosed on the condominium, the Kaitzes bring this action to recover a deficiency under the first and second notes. They now move for partial summary judgment, alleging that there are no disputed issues of material fact concerning the Shanes’ liability on the first and second notes. The Kaitzes have the burden of proving the absence of a triable issue concerning the Shanes’ liability and that they are entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Since the Kaitzes have produced promissory notes bearing the Shanes’ signatures[7] and the Shanes neither challenge the authenticity of their signatures nor allege payment, the Kaitzes have established a prima facie case. Loew v. Minasian, 361 Mass. 390, 391 (1972) (plaintiff seeking to collect on promissory note establishes prima facie case by producing the notes and proving the affixed signatures). The Shanes, therefore, have the burden of demonstrating that there is a material issue of fact pertaining to their respective liability on the notes. Norfolk County Trust Co. v. Vichinsky, 5 Mass.App.Ct. 768 (1977) (when plaintiff seeking to collect on note produces note and there is no dispute about the genuineness of the signatures thereon, the defendant then has the burden of disproving liability).
The Shanes raise several defenses to liability on the second note. They claim that the Kaitzes violated G.L.c. 167E, §11(b) by taking a second mortgage on the condominium as security for the second note.[8] Since the parties dispute whether the Kaitzes’ $200,000 loan to the Shanes was “a commercial or business loan” within the meaning of G.L.c. 167E, §11(b), according to the Shanes, there is a material *158 dispute of fact and summary judgment is inappropriate. This court disagrees.
Chapter 167E, Section 11 (b) prohibits “banks” from taking a second mortgage on real estate as primary security for a business or commercial loan. Since the Kaitzes are manifestly not a “bank” within the meaning of G.L.c. 167E, §11(b), this statute is inapplicable. The Shanes’ G.L.c. 167E claim, therefore, fails as a matter of law.
The Shanes next contend that the second note is unenforceable because it is usurious under G.L.c. 271, §49.[9] Although the second note’s stated interest rate is 12.75 percent, the agreement required Michael Shane to pay the Kaitzes at least $50,000 beyond full payment of the second note.[10] The money that Michael Shane was required to pay the Kaitzes beyond full payment of the note, according to the Shanes, constitutes “interest and expenses” within the meaning of G.L.c. 271, §49(a).
As noted, this court has discretion under G.L.c. 271, 49(c) to void a usurious loan. In determining whether to exercise such discretion, this court must consider a number of factors, "including the importance of the public polity against usury, whether a refusal to enforce [the second note] will further that policy, the gravity of the misconduct involved, and the impact of the remedy on the parties’ rights and duties.” Begelfer v. Nagaraian, 381 Mass. 177, 189 (1980). Applying these factors, this court concludes that it would be inequitable to void the second note and allow the Shanes, who undeniably received $200,000 from the Kaitzes, to receive a windfall. If the Kaitzes’ loan was usurious, the appropriate remedy is for this court to restrict their recovery on the second note to the principal plus a lawful interest rate.[11] Allegheny International Credit Corp. v. Bio-Energy of Lincoln, Inc., 21 Mass.App.Ct. 155, 163 (1985) (partial summary judgment on liability appropriate when remaining factual question pertains to whether transaction was usurious loan).
The Shanes next contend that the Kaitzes cannot recover a deficiency on either the first or second note because they failed to dispose of their collateral in a “commercially reasonable” manner as required by G.L.c. 106, §9-504(3). While it is true that a secured party may not recover a deficiency in some circumstances when the secured party fails to dispose of collateral reasonably, a secured party’s commercially unreasonable disposition of collateral neither excuses the debtor’s original liability on a note nor automatically forecloses the debtor’s liability for any deficiency. Shawmut Bank v. Chase, 34 Mass.App.Ct. 266, 271-72 (1993) (effect of unreasonable disposition of collateral is rebuttable presumption that the foreclosure sale proceeds equal the debt); Poti Holding Co., Inc., v. Piggott, 15 Mass.App.Ct. 275, 277-78 (1983). Further, whether a disposition of collateral is commercially reasonable is a question of fact, making summary judgment inappropriate. Poti Holding Co., Inc. v. Piggott, supra. The reasonableness of the Kaitzes’ disposition of collateral is a factual issue that must be determined at a trial on the issue of damages.
Having considered Michael Shane’s defenses, this court concludes that he is liable on the first and second notes. At trial on the issue of what damages, if any, the Kaitzes are entitled to collect, the Kaitzes must prove that they disposed of their collateral in a reasonable manner or that they sold the collateral for a fair market value in order to recover any deficiency. Shawmut Bank v. Chase, supra 34 Mass.App.Ct. at 271-72 (creditor seeking deficiency judgment has burden of proving commercially reasonable disposition of collateral). While this court concludes that Michael Shane is liable on the first and second notes, it must now consider the separate defenses raised by Barri Shane.
In addition to the defenses already considered, Barri Shane contends that she received no consideration for signing the note, having signed it as an accommodation party. An accommodation party is “one who signs [an] instrument in any capacity for the purpose of lending its name to another party to it.” G.L.c. 106, §3-415(1). An accommodation party is not liable to the party accommodated. G.L.c. 106, §3-415(5); Guinness Import Co. v. DeStefano, 25 Mass.App.Ct. 366, 369 (1988). See also Great Barrington Savings Bank v. Day, 288 Mass. 181, 184 (1934). Barri Shane contends, alternatively, that she is not liable even if she is not an accommodation party on the ground that she received ho consideration for her signature. G.L.c. 106, §3-408 (“want or failure of consideration is a defense against any person not having the rights of a holder in due course”).[12]
Whether Barri Shane signed the second note at the request and for the accommodation of the Kaitzes and whether she received any consideration for her signature are questions of fact. Guinness Import Co. v. DeStefano, supra, 25 Mass.App.Ct. at 369; see Farmers State Bank of Oakley v. Cooper, 608 P.2d 929, 934 (1980) (parties’ intention is significant element in determining whether a signatory is an accommodation parly; two primary indicia of accommodation status are no benefits from proceeds of the instrument and signature required by maker to obtain loan). John Kaitz testified at his deposition that he insisted that Barri Shane sign the second note, stating that he would have refused to loan Michael Shane the $200,000 in the absence of Barri Shane’s signature. The parties also dispute the purpose of the $200,000 loan.[13]
Since the parties dispute the loan’s purpose, this court must accept Barri Shane’s version of the facts for the purpose of deciding the Kaitzes’ motion for partial summary judgment. Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 112-13 (1990) (factual disputes must be resolved against the party moving for summary judgment). Barri Shane alleges that the $200,000 loan was part of a business transaction between Michael Shane and the Kaitzes in which she was completely uninvolved. According to Barri Shane, *159 she received no benefit from the loan proceeds. In light of the factual nature of the issue and Barri Shane’s allegations, this court concludes that summary judgment in favor of the Kaitzes on the issue of Barri Shane’s liability is inappropriate.
The factual dispute concerning whether Barri Shane signed the second note as an accommodation party and whether she received any consideration for her signature also precludes summary judgment in favor of Barri Shane. Since neither the Kaitzes nor Barri Shane demonstrated the absence of material factual issues and that they are entitled to judgment as a matter of law, their respective motions for summary judgment must be denied on the issue of Barri Shane’s liability.
ORDER
For the foregoing reasons, it is ORDERED (1) that plaintiff John and Lorraine Kaitzes’ motion for partial summary judgment be ALLOWED on the issue of Michael Shane’s liability and DENIED on the issue of Barri Shane’s liability; and (2) that defendant Barri Shane’s cross-motion for summary judgment be DENIED.

 The stated interest on both notes was 12.75%.

 John Kaitz testified at his deposition that he had no knowledge of Barri Shane’s financial status. He also testified that he believed that the Shanes were applying jointly for the $200,000 loan so that they could purchase a family home. The Shanes, conversely, contend that the loan was intended to provide capital for LEP and that Barri Shane received no benefit from the loan proceeds.

 According to the agreement, Shane promised to use the first $650,000 of the sale proceeds to pay the first and second notes in full and to remit the next $50,000 to the Kaitzes. At his deposition, John Kaitz testified that the $50,000 beyond full payment of the notes was an incentive for granting the $200,000 loan.

 LEP was apparently placed in bankruptcy prior to the Shanes’ default. Consequently, LEP has not sold or refinanced the LEP property to ensure the Shanes’ payment of the first and second notes as anticipated by the agreement. The Shanes allege that the Kaitzes acted unreasonably with respect to the LEP property because the Kaitzes allowed the court-appointed trustee to encumber it.

 Although Michael Shane signed both the first and second notes, Barri Shane’s signature appears only on the second note. The parties do not dispute that Barri Shane is not liable on the first note.

 Chapter 167E, Section 11(b) states that “(a] bank may make or acquire loans upon any real estate as collateral security for a commercial or business loan; provided, however, that said second mortgage shall not be taken as primary security for such loan.”

 G.L.c. 271, §49(a) states in pertinent part:
Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury.
G.L.c. 271, §49(c) authorizes this court to declare a usurious loan null and void.

 John Kaitz described the $50,000 as an incentive to loan the Shanes $200,000. See note 5.

 The Kaitzes seek partial summary judgment establishing the Shanes’ liability on the first and second notes; they are not seeking to enforce the agreement. Since the stated interest rate is 12.75 percent under the second note’s terms, the Kaitzes only seek to recover interest at a lawful rate.

 Barri Shane also argues that she is not liable on the second note because the Kaitzes violated the Equal Credit Opportunity Act (the Act) and the Federal Reserve Board’s regulations promulgated thereunder. See 15 U.S.C., §1691 et seq.; 12 C.F.R. §202.1 et seq. However, the Kaitzes’ alleged violation of the Act is not germane to their motion for partial summary judgment because it would not render the second note unenforceable against Barri Shane. The Act and its implementing regulations provide civil penalties, which may include actual and punitive damages, as remedies for violations of its provisions. 15 U.S.C., §1691e; 12 C.F.R. §202.14.

 In their respective memoranda, the Shanes state that the loan’s purpose was to provide $200,000 to invest in LEP while the Kaitzes state that it was to fund the Shanes’ purchase of a family home. Neither the Shanes nor the Kaitzes state their allegations concerning the loan’s purpose in an affidavit or in any other admissible form.