Haggerty, S. Jane, J.
The plaintiff, Comprops Limited Partnership (“Comprops”), filed this action against defendants, the Spangenberg Group (“Group”) and Robert L. Spangenberg (“Spangenberg”), asserting claims of breach of lease (Count I) and breach of contract of guaranty (Count II) arising out of Comprops’ lease of certain commercial space to Group. The action is now before the court on Comprops’ motion for summary judgment. For the reasons that follow, Comprops’ motion is ALLOWED in part and DENIED in part.
BACKGROUND
The facts as taken from the summary judgment record and viewed in the light most favorable to the defendants are as follows. On or about August 29, 2001, Group entered into a lease with Comprops (“Lease") for commercial space at a building located at 1001 Watertown Street, West Newton, Massachusetts (“Premises”). Spangenberg signed the Lease as Group’s president. On or about the same date, a Guaranty (together with the Lease, “Lease documents”) was executed, under which Spangenberg personally guaranteed the full performance of Group of all of its obligations under the Lease. While Spangenberg does not recall signing the Guaranty, he testified that the signature on the Guaranty appears to be his, and the defendants admit the Guaranty’s execution. At the time' Spangenberg allegedly signed the Lease documents, Group had, according to Spangenberg, occupied the Premises for approximately twenty years under earlier leases.
Spangenberg graduated from Boston University and Boston University Law School, and became a licensed attorney in 1961. He started his legal career as a civil and criminal trial attorney, and then focused on legal aide service and criminal law. During his career, Spangenberg has served as Executive Director of what is now Greater Boston Legal Services, and was also Deputy Director of the Criminal Justice Division at ABT Associates. Spangenberg started Group in 1985. Spangenberg did not seek the advice of counsel before signing the Lease documents.
On or about October 31, 2006, an extension of the Lease and the Guaranty through September 30, 2011 was executed. Spangenberg testified that the signature on the extension appears to be his. Under the Lease, Group is to pay a yearly fixed rent of $48,672.00, to be paid in equal monthly installments of $4,056.00.
Section 5 of the Lease requires Group to pay “additional rent,” which includes (1) Group’s share of the utilities, (2) any increase in Group’s share of real estate taxes for the property over 2002 taxes, (3) any increase in “common area maintenance costs” over 2002 cost, and (4) Comprops’ costs in repairing items Group damages. Section 5.1 outlines what costs constitute “common area maintenance costs.”
Section 18 of the Lease addresses Group’s potential default. It provides that default occurs if Group fails to pay any monthly installment of the yearly fixed rent, any additional rent, or any other sum due under the Lease. Should Comprops terminate the Lease based on Group’s default, Group must pay Comprops all amounts then due under the Lease, plus “the total of Fixed Rent and Landlord’s estimate of Additional Rent and other charges which may become due under this Lease through” September 30, 2011 (“Acceleration Clause”). Section 18 further provides that Group “shall pay all Landlord’s costs, including reasonable attorneys fees, in enforcing, defending and/or interpreting Landlord’s rights hereunder.”
As of November 2007, Group ceased making payments to Comprops under the Lease. On May 29, 2008, Comprops sent to Group a Notice to Quit for Non-Payment of Rent. Group vacated the Premises at the end of December 2008 after giving oral notice. By letter dated January 23, 2009, Comprops gave notice to *172 the defendants that they owed $136,786.47 pursuant to Section 18 of the Lease. After Group vacated the Premises, Comprops paid $1,068.00 to repair a HVAC unit located on the roof of the building housing the Premises.
DISCUSSION
Comprops argues that because there is no dispute that Group has failed to make its required payments under the Lease, it is entitled to summary judgment on both claims. The defendants assert that the Acceleration Clause is unenforceable. They further assert that Comprops’ claimed damages include amounts for which the lease does not provide, and that Comprops requests unreasonable attorneys fees and costs. After examining the summary judgment record, the court concludes that summary judgment in favor of Com-props is appropriate on the issue of the defendants’ liability under Count I and Count II of Comprops’ complaint. Comprops is therefore entitled to recover the $136,786.47 it seeks pursuant to the Acceleration Clause. There are genuine issues of material fact, however, regarding whether Comprops may recover from the defendants the $1,068.00 it paid to repair the HVAC unit. Finally, the court concludes that Com-props asks for reasonable attorneys fees and costs— with one minor exception discussed below — and will therefore award those fees and costs.
I. Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis, 410 Mass, at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” See Pederson, 404 Mass, at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-371 (1982).
II. Analysis
A. Acceleration Clause
The defendants challenge the enforceability of the Acceleration Clause not on the basis of the two required elements of such clauses, but rather on their assertion that Spangenberg was not a sophisticated commercial party at the time he signed the Lease documents.[2] The defendants cite Cummings Properties. LLC v. National Communications Corp., 449 Mass. 490 (2007), which holds “in the case of a commercial agreement between sophisticated parties containing a liquidated damages provision applicable to breaches of multiple covenants, it may be presumed that the parties intended the provision to apply only to those material breaches for which it may properly be enforced.” Id. at 495-96 (emphasis added). They assert that the determination of whether Spangenberg was a sophisticated party is a question of fact for the jury, but they cite no caselaw to support that assertion. The court concludes that the enforceability of the Acceleration Clause — including the relative sophistication of the parties — is a question of law. See NPS, LLC, 451 Mass. at 419 (“Whether a liquidated damages provision in a contract is an unenforceable penally is a question of law”).
To support their claim regarding Spangenberg’s lack of sufficient sophistication, the defendants cite the following undisputed facts: (1) Spangenberg focused his legal career on legal aide services and criminal law, not contracts or commercial leasing; (2) he did not obtain legal advice before signing the Lease documents; (3) Group was a small corporation, with Spangenberg as the sole principal and only a few employees; (4) Spangenberg was not directly involved in the payment of rent pursuant to the Lease or in the details of the tenancy relationship; (5) Group had already been a tenant at the Premises for many years before Spangenberg signed the Lease documents; and (6) Spangenberg took Ritalin and Prozac for “a good many years.”
These facts fail to establish that Spangenberg was insufficiently sophisticated at the time he signed the Lease documents. Spangenberg is highly educated, having received his undergraduate and law degrees from Boston University, and has been a licensed attorney since 1961. While he may have focused his career on legal aide and criminal law, he was a civil and criminal trial attorney for several years. He also held several high-level positions, including Executive Director of what is now Greater Boston Legal Services for approximately eight years and Deputy Director of the Criminal Justice Division at ABT Associates for approximately seven-and-a-half years. Spangenberg founded and directed a corporation (albeit, a small one) for approximately sixteen years by the time he signed the Lease documents. The fact that Spangenberg did not retain legal advice before signing the Lease documents, and that he was not directly involved in the payment of rent or the details of Group’s tenancy, does not render him unsophisticated at the time of the Lease documents.[3]
*173 Also, Group occupied the premises for many years under a number of prior leases, which indicates Spangenberg was or should have been familiar with the general circumstances of a lease of the premises. See Tiffany, 32 Mass.App.Ct. at 175 n.5. This familiarity further suggests he was not as naive as the defendants claim. As to the claim that Spangenberg’s mental condition and medications raise doubts as to his level of sophistication at the time he signed the Lease documents, he testified at his deposition that he does not have any illness that affects his mental competence. Spangenberg also testified that, as of 2008, he had been on Ritalin and Prozac for a good many years. The summary judgment record, however, does not indicate whether Spangenberg was taking these medications at the time he signed the Lease documents, nor does it establish (via an expert opinion, for example) that Ritalin or Prozac adversely affects one’s mental faculties.
After examining the summary judgment record, the court concludes that Spangenberg was a sophisticated party at the time he signed the Lease documents and that, therefore, the Acceleration Clause may be enforced against the defendants. See Krumholz v. AJA, LLC, 2010 WL 103887 at *3 (D.Mass. 2010) (where one plaintiff already owned small business and other plaintiff was experienced attorney, court stated in dicta that plaintiffs “understood and voluntarily agreed to the contract at issue” and therefore were “bound by the contractual language to which they agreed”). In their opposition to Comprops’ motion for summary judgment, the defendants do not challenge the validity of the Guaranty. Accordingly, summary judgment must be entered in favor of Comprops regarding the defendants’ liability on both Count I and Count II of its complaint.
B. Comprops’ Damages
The defendants claim that Comprops may not recover as part of its damages the cost ($1,068.00) of repairing a HVAC unit at the building housing the Premises because the Lease does not provide for such recovery. “If a contract, in this case a lease, is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment.” Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). “Where, however, the contract (lease) has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial.” Id. The court determines whether there are ambiguities in the Lease. See Diamond Crystal Brands, Inc., v. Backleaf, LLC, 60 Mass.App.Ct. 502, 504-05 (2004). After reviewing the relevant Lease provisions, the court concludes that the provisions are ambiguous.
Section 5 provides that Group is responsible for “additional rent,” which includes an increase in Comprops’ common area maintenance costs “with respect to its operation and maintenance of and repairs to the Property and Building.” Section 5.1 defines common area maintenance costs in part as “costs of repairs, replacement and other work relating to the maintenance, repair and improvements to the Building . . ., the Property, and common facilities serving the Building and the Property.” Under Section 6, Group is responsible for maintaining and repairing “facilities or services provided via systems solely serving the . . . Premises.” Further, Group is responsible for repairing damage it causes to the “Building” or “Property” under Section 10A of the Lease, while Section 10B requires Comprops to “maintain the . . . common areas and facilities and systems serving the Premises.”
Given the seemingly contradictory provisions regarding who is to maintain facilities and systems serving the Premises, and the fact that neither the Lease nor the summary judgment record indicates whether the rooftop HVAC unit Comprops repaired is considered a facility or system serving only the Premises (versus a common facility), the court concludes there are genuine issues of material fact regarding whether Comprops is entitled to recover what it paid to repair the HVAC unit. For this reason, Comprops’ summary judgment motion must be denied as to the $1,068.00 it seeks in addition to the damages under the Acceleration Clause.
C. Attorneys Fees and Costs
Section 18 of the Lease provides for Comprops’ recovery of reasonable attorneys fees and of costs should Comprops be required to enforce any of its rights under the Lease in the event of Group’s default. The defendants claim that Comprops’ asserted attorneys fees and costs are unreasonably excessive because of the nature of Comprops’ action and its lack of success on its real estate attachment motion. The court disagrees.
A trial judge has broad discretion in determining what is a reasonable amount to award a party for attorneys fees. See Berman v. Linnane, 434 Mass. 301, 302-03 (2001). The focus of the awards is on neither the bill submitted nor the amount in controversy. Id. at 303. Rather, to determine the reasonableness of the fee, the court uses the “lodestar” approach, under which the court multiplies the “number of hours reasonably spent on the case times a reasonable hourly rate.” Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993). The party seeking attorneys fees bears the burden of establishing the reasonableness of both the number of hours billed and the hourly rate. See Society of Jesus of New England v. Boston Landmarks Comm’n, 411 Mass. 754, 759 (1992). When reviewing a party’s request for attorneys fees, the court is not “required to review and allow or disallow each individual item in the bill,” rather, the court may consider the bill in its entirety. Berman, 434 Mass. at 303.
When determining whether the award of attorneys fees is reasonable, the court should consider the *174 following factors: (1) “the nature of the case and the issues presented”; (2) “the time and labor required”; (3) “the amount of damages involved”; (4) “the result obtained”; (5) “the experience, reputation and ability of the attorney”; (6) “the usual price charged for similar services by other attorneys in the same area”; and (7) “the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979), overturned on other grounds, Knapp Shoes, Inc. v. Sylvania Mfg. Corp., 418 Mass. 373 (1994). In determining the reasonableness of the fees, no one factor is dispositive, and a factor-by-factor approach, although helpful, is not necessary. See Berman, 434 Mass. at 303.
John B. Harkavy (“Attorney Harkavy”), Comprops’ counsel, submitted to the court a printout detailing the number of hours his law firm devoted to Comprops’ case and the costs his law firm incurred. Attorney Harkavy also submitted an affidavit stating that all hourly rates counsel’s firm charged were normal billing rates, and that, in particular, he understands his billing rate ($370.00 per hour) to be “reasonable and consistent with the rates charged by other attorneys with my experience.” The defendants have not submitted anything to dispute Attorney Harkavy’s assertions.
Based on the materials before the court, it finds the attorneys fees and costs Comprops seeks to be reasonable, with one minor exception discussed below.[4] While the defendants are correct in claiming that the issues involved in the case are relatively straightforward, Attorney Harvaky’s law firm billed a total of 35.70 hours in the approximately eight months from the time it began working on Comprops’ case to the time it completed Comprops’ summary judgment materials. That works out to an average of only approximately 4.50 hours per month, which the court views as a reasonable amount of time to have expended on a simple case. Additionally, despite the defendants’ assertion to the contrary, Comprops was in fact successful in obtaining a real estate attachment against Spangenberg, in the amount of $150,000.00 by order dated March 20, 2009 (Smith, J.). As discussed above, Comprops’ motion for summary judgment has also proven successful as to the vast majority of the damages it seeks from the defendants. Finally, Attorney Harkavy states in his affidavit that he has twenty-six years of experience in complex business and commercial litigation, and has achieved an AV rating from Martindale-Hubbell. Given Attorney Harkavy’s experience and peak rating, and the-fact that he states his hourly billing rate is consistent with similarly-situated attorneys — an assertion the defendants do not dispute with any materials — the court finds Attorney Harkavy’s $370.00 per hour billing rate to be reasonable.
The court notes, however, that, according to the printout, two attorneys worked on Comprops’ case, Attorney Harkavy at $370.00 per hour, and another attorney who billed at $375.00 per hour. The attorney who billed at the higher rate devoted only 2.10 hours to the case. There is nothing in the materials before the court describing the other attorney’s experience and/or rating, nor are there any statements that his or her $375.00 per hour rate is consistent with similarly-situated attorneys. The court will therefore apply Attorney Harkavy’s billing rate to the 2.10 hours the other attorney billed. Based on the “lodestar” approach, the court will award attorneys fees in the amount of $13,209.00, 35.70 total hours multiplied by $370.00 per hour. The court will also award Com-props the total costs, $780.92, outlined in the printout Attorney Harkavy provided, as the expenses are all reasonable and associated with litigating this case.
ORDER
For the foregoing reasons, it is hereby ORDERED that Comprops’ motion for summary judgment be ALLOWED as to the defendants’ liability on Count I and Count II of Comprops’ complaint, be ALLOWED as to the damages ($136,786.47) it seeks pursuant to the Acceleration Clause, and be DENIED as to the damages ($1,068.00) it seeks for repair of the HVAC unit. It is further ORDERED that the defendants shall pay to Comprops $13,989.92 in reasonable attorneys fees and expenses of litigation.

 In Massachusetts, acceleration clauses are enforceable if (1) “at the time of contracting the actual damages flowing from a breach were difficult to ascertain,” and (2) “the sum agreed on as liquidated damages represents a ‘reasonable forecast of damages ex-pected to occur in the event of a breach.’ ” NPS, LLC v. Minihane, 451 Mass. 417, 420 (2008), quoting Cuminngs Props., LLC v. National Communications Corp., 449 Mass. 490, 494 (2007). In their memorandum in opposition to Comprops’ summary judgment motion, the defendants acknowledge that the Acceleration Clause “is the sort of clause which has recently been held enforceable,” albeit between sophisticated parties.

 Additionally, any suggestion that Spangenberg did not carefully read the Lease documents before signing them does not permit the defendants to claim now the Acceleration Clause may not be enforced. See Tiffany v. Sturbridge Camping Club, Inc., 32 Mass.App.Ct. 173, 175 n.5 (1992) (“In the absence of fraud ... a person who signs a written agreement is bound by its terms whether he reads and understands them or not”).

 Neither party requested an evidentiary hearing on the issue of the reasonableness of Comprops’ requested attorneys fees. The court therefore need not hold a hearing, and may decide the issue based on the written submissions before it. See J.P. Constr. Co. v. Stateside Bldrs., Inc., 45 Mass.App.Ct. 920, 920-21 (1998) (where defendants failed to specifically request evidentiary hearing, they were not entitled to one); see also Fabre v. Walton, 441 Mass. 9, 10-11 & n.1 (2004) (discussing procedure for seeking appellate attorneys fees, and stating, “In many cases a hearing will be unnecessary. The court will base the order on the parties’ respective written submissions.”). But see Shawmut Bank, NA v. C base, 34 Mass.App.Ct. 266, 269 (1993) (noting “an assessment of damages hearing was required in this case because reasonable attorneys fees were to be determined,” but citing federal case law).