LUMBER MUTUAL INSURANCE COMPANY *vs.* ZOLTEK
CORPORATION.

Middlesex. December 7, 1994. - March 14, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment. *Insurance*, Property damage, Subro-
gation. *Subrogation. Landlord and Tenant*, Lease as contract. *Con-
tract*, Construction of contract, Lease of real estate.

In an action for negligence and breach of contract brought by an insurer
as subrogee of its insured's rights, to recover payments made under a
commercial property hazard liability policy for damage to the insured's
property resulting from an explosion allegedly caused by the negligence
of the insured's tenant, the judge correctly entered summary judgment
for the tenant where the tenant was a coinsured under the policy pursu-
ant to the provisions of the lease and where the lease provisions setting
out the duties of the tenant with respect to its maintenance and delivery
of the premises in good condition expressly excepted damage from fire
or other casualty. [706-707] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 10, 1991.

The case was heard by *Thayer Fremont-Smith*, J., on a
motion for summary judgment.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Scott D. Peterson* for the plaintiff.

*Charles J. O'Malley* for the defendant.

NOLAN, J. In this appeal the sole issue is whether the
judge correctly ordered summary judgment for the defend-
ant. We granted Zoltec's application for direct appellate re-
view of Lumber Mutual Insurance Company's appeal. We
affirm the judgment.

The trustees of Foundry Industrial Park Trust (Foundry),
as lessor, brought this action against Zoltek Corporation, the

lessee, to collect payment allegedly due under a commercial lease. These claims and counterclaims were dismissed by agreement. Lumber Mutual Insurance Company (Lumber), Foundry's insurer, was permitted to intervene as Foundry's subrogee with respect to an insurance claim it had paid arising out of an explosion at Zoltek's premises. Lumber alleged Zoltek's negligence as the cause of the explosion.

The material portions of the lease are set out in the margin.[1] A cover letter attached to the lease provided that Zoltek

---

[1]The relevant provisions of the lease are as follows:

"6. RENT ADJUSTMENT. The LESSEE shall pay to the LESSOR as additional rent hereunder when and as designated by notice in writing by LESSOR, fifty-six percent (56%) of Operating Expenses incurred during the calendar year.

" 'Operating Expenses' are defined for the purposes of this agreement as: . . . hazard and liability insurance on the whole of the premises of which the leased premises are a part . . . .

". . .

"10. FIRE INSURANCE. The LESSEE shall not permit any use of the leased premises which will make voidable any insurance on the property of which the leased premises are a part, or on the contents of said property . . . . The LESSEE shall on demand reimburse the LESSOR, and all other tenants, all extra insurance premiums caused by the LESSEE's use of the premises.

"11. MAINTENANCE.

LESSEE'S OBLIGATION. The LESSEE agrees to maintain the leased premises in good condition, damage by fire and other casualty only excepted . . . . The LESSEE shall not permit the leased premises to be overloaded, damaged, stripped, or defaced, nor suffer any waste.

". . .

"18. FIRE CASUALTY — EMINENT DOMAIN. Should a substantial portion of the leased premises, or of the property of which they are a part, be substantially damaged by fire or other casualty, . . . the LESSOR may elect to terminate this lease. When such fire, casualty, or taking renders the leased premises substantially unsuitable for their intended use, a just and proportionate abatement of rent shall be made, and the LESSEE may elect to terminate this lease if

"(a) The LESSOR fails to give written notice within thirty (30) days of intention to restore leased premises, or

"(b) The LESSOR fails to restore the leased premises to a condition substantially suitable for their intended use within ninety (90) days of said fire, casualty or taking.

"21. SURRENDER. The LESSEE shall at the expiration or other termination of this lease . . . deliver to the LESSOR the leased premises . . . in good condition, damage by fire or other casualty only excepted . . . ."

was not required to carry property insurance on the building. In paragraph 6 of the lease, quoted above, note 1, *supra*, Zoltek was required to pay a rent adjustment of fifty-six per cent of operating expenses of Foundry and these included hazard and liability insurance "on the whole of the premises of which the leased premises are a part." Foundry in its letter acknowledged that separate property damage coverage on its equipment, furnishings, and inventory should be carried by Zoltek.

During the term of the lease, a pressurized tank on Zoltek's premises exploded, causing substantial damage to Foundry's property. Lumber paid Foundry's claim under its commercial property hazard liability policy. Lumber, seeking to recover the amount paid to Foundry, then brought this subrogation action against Zoltek, alleging the negligence of Zoltek as the cause of the explosion and breach of contract. The parties filed a stipulation of facts. Summary judgment was entered for Zoltek.

Summary judgment lies when there is no genuine issue of material fact in dispute and when the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974); *Smith* v. *Massimiano*, 414 Mass. 81, 85 (1993).

As subrogee, Lumber has any right of action which Foundry might have had against Zoltek. *New England Gas & Elec. Ass'n* v. *Ocean Accident & Guarantee Corp.*, 330 Mass. 640, 659 (1953). However, from the language of the lease in which Zoltek is required to contribute to the premium for the very policy under which Lumber paid Foundry and the accompanying letter in which Foundry advised Zoltek that, because of Zoltek's contribution to the premium, it need not carry its own property hazard liability policy, it is clear that Foundry and Zoltek are coinsureds. Accordingly, Lumber has no more right against Zoltek than it has against Foundry because they are coinsureds.

Paragraph 11(a) requires the lessee (Zoltek) to maintain the leased premises in good condition, damage by fire and other casualty only excepted. Paragraph 21 of the lease pro-

vides that at the expiration of the lease, Zoltek deliver to Foundry the premises in good condition, damage by fire or other casualty excepted.

These provisions leave no room for the argument that the intent of the parties is a triable issue and therefore, summary judgment does not lie. The intent is clear from the language. See *General Mills, Inc.* v. *Goldman*, 184 F.2d 359 (8th Cir. 1950), cert. denied, 340 U.S. 947 (1951). The interpretation of a written contract or lease is a question of law, not of fact. *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 446-447 (1992). Because the intention is clear, this case is distinguishable from *Aetna Ins. Co.* v. *Craftwall of Idaho, Inc.*, 757 F.2d 1030, 1031-1034 (9th Cir. 1985).

The plaintiff's argument based on contract fares no better because of the provisions of the lease noted above. See *Slocum* v. *Natural Prods. Co.*, 292 Mass. 455, 456-457 (1935).

Cases cited by the plaintiff against the conclusion that Foundry and Zoltek are coinsured do not contain the explicit language of this lease and letter in support of the fact that they are coinsureds. In conclusion, the result that we reach is simply giving Zoltek the benefit of the insurance which it purchased.

*Judgment affirmed.*

O'CONNOR, J. (dissenting). I agree with the court that "[a]s subrogee, Lumber [insurer] has any right of action which Foundry [lessor] might have had against Zoltek [lessee]." *Ante* at 706. I do not agree, however, that, from the language of par. 6 of the lease and the cover letter attached thereto, Foundry waived or otherwise relinquished its right to maintain a tort action against Zoltek to recover for the fire damage to Foundry's building caused by Zoltek's negligence. It of course follows that I also do not agree with the court's conclusion that "it is clear that Foundry and Zoltek are coinsureds [and] [a]ccordingly, Lumber has no more right against Zoltek than it has against Foundry be-

cause they are coinsureds." *Ante* at 706. Furthermore, to the extent that the court claims that pars. 11 (a) and 21 of the lease also make clear, or even suggest, that Foundry and Zoltek are coinsureds or that Zoltek was otherwise exempt from tort liability to Foundry, I do not agree. One thing that is abundantly clear, however, is that the court's opinion is bereft of any stated rationale for its conclusion that the lease provisions evidence beyond reasonable dispute the parties' intent to exempt Zoltek from liability to Foundry for negligently burning Foundry's building.

Paragraph 6 of the lease provides:

> "RENT ADJUSTMENT. The LESSEE shall pay to the LESSOR as additional rent hereunder when and as designated by notice in writing by LESSOR, fifty-six percent (56%) of Operating Expenses incurred during the calendar year.
>
> " 'Operating Expenses' are defined for the purposes of this Agreement as: Taxes and betterments assessed against the whole premises of which the leased premises are a part; hazard and liability insurance on the whole of the premises of which the leased premises are a part; and snowplowing."

There are two relevant letters. By letter dated November 1, 1988, Foundry's counsel's letter informed the tenant: "5. You are not required to carry property insurance (fire with extended coverage) on the building. You should, and I am sure you do, carry property damage insurance on your equipment, furnishings and inventory. The insurance referred to in paragraph 17 of the lease is comprehensive public liability insurance." In addition, there was a cover letter attached to the lease, dated November 10, 1988, in which Foundry informed Zoltek that Zoltek "shall not be required to carry property insurance on the building." Thus, it was made clear that Zoltek was not responsible for making sure that Foundry's building was insured against fire damage. Contrary to the court's assertion (*supra* at 706), however,

neither letter told Zoltek that, "because of Zoltek's contribution to the premium, it need not carry its own property hazard liability policy." Neither letter mentioned "Zoltek's contribution to the premium." Significantly, neither letter even implied that, because the amount of Zoltek's rent would be contingent to a degree on the amount of expenses Foundry would incur for premiums for whatever hazard and liability insurance Foundry might choose to purchase, Zoltek could assume that, as to any fire insurance that Foundry might obtain, Zoltek would be a coinsured with Foundry or would otherwise be exempt from liability for fire damage to Foundry's building caused by Zoltek's negligence.

The lease's provisions as to rent are for the benefit of Foundry, the lessor, not Zoltek, the lessee. Paragraph 6 does not obligate Foundry to purchase insurance for Zoltek's benefit. Paragraph 6 does not even oblige Foundry to purchase insurance for its own benefit. Paragraph 6 does not oblige Foundry to do anything. It simply requires Zoltek to pay Foundry a fixed sum plus a variable sum in return for which Zoltek will be entitled to benefits, such as occupancy, for which provision is made in other paragraphs of the lease. None of those provisions explicitly or implicitly suggests that the tenant will be a coinsured or will be exempt from liability for its negligence in causing damage to Foundry's building by fire. The court should not construe a contract provision as exempting a party from liability for its own negligence, see *New York, N.H. & H.R.R.* v. *Walworth Co.*, 340 Mass. 1, 5 (1959), unless failure to do so would render the provision meaningless or would manifestly contravene the contracting parties' intentions. See *Rathbun* v. *Western Mass. Elec. Co.*, 395 Mass. 361, 363 (1985); *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 223-225 (1981) ("The general rule is that there must be express language creating an obligation to indemnify one against his own negligence"). Perhaps, if the lessor had contractually bound itself to obtain fire insurance on the lessor's building, a situation that has obtained in other cases throughout the country, it reasonably could be argued that that provision must have been designed to benefit the lessee

by exempting the lessee from liability for its own negligence in causing fire damage to the lessor's property. However, there is no need to speculate about that in this case because, here, there is no provision in the relevant lease, or in accompanying letters, requiring the lessor, Foundry, to purchase fire insurance.

That brings me to a discussion of pars. 11 (a) and 21, on which the court perhaps relies. Paragraph 11 (a), in relevant part, is as follows:

> "11. MAINTENANCE. LESSEE'S OBLIGATION. The LESSEE agrees to maintain the leased premises in good condition, damage by fire and other casualty excepted. . . ."

The relevant portion of paragraph 21 states the following:

> "21. SURRENDER. The LESSEE shall at the expiration or other termination of this lease . , . deliver to the LESSOR the leased premises . . . in good condition, damage by fire or other casualty only excepted. . . ."

The court appears to rely on *Slocum* v. *Natural Prods. Co.*, 292 Mass. 455, 456-457 (1935), for the proposition that a provision such as par. 21, sometimes referred to as a "yield-up" clause, is intended by the parties to exempt the tenant from liability in tort for the tenant's negligence in damaging the landlord's building by fire. The court's reliance on *Slocum* is misplaced. The questions before the court in *Slocum* "ar[o]se out of a count in contract wherein the plaintiffs as lessors declare[d] for breach by the defendant as lessee of a covenant in a lease 'to make all repairs, both outside and inside usual or necessary to keep the demised premises in good repair and condition in every respect during the term of this lease, damage by fire or unavoidable casualty only excepted.' " *Id.* at 456. The court concluded that the exception for "damage by fire or unavoidable casualty" "includes fires resulting from negligence of the lessee," *id.* at

457, with the result that the lessors were held not to have a meritorious contract claim.

It is fairly arguable here, too, that, in view of pars. 11 (a) and 21, Foundry would not have a cause of action *sounding in contract* against Zoltek. It does not follow, however, from the fact (if indeed it be a fact) that Foundry would not have a meritorious contract claim against Zoltek based on Zoltek's failure to rectify the fire damage resulting from its negligence, that Foundry would not have a meritorious tort claim sounding in negligence. Indeed, this court in *Slocum* was careful to say, "It does not necessarily follow that the lessors would have no action in tort for the damage sustained." *Id.* Tortious acts are "breaches of duty arising *by operation of law, Scandura* v. *Trombly Motor Coach Serv., Inc.*, 370 Mass. 612, 618 (1976), rather than *by operation of contract.*" *Monadnock Display Fireworks, Inc.*, 388 Mass. 153, 156 (1983). The exceptions set forth in pars. 11 (a) and 21 clearly are focused on duties arising by operation of contract and not on duties arising by operation of law.

I am satisfied that there is no sound reason for concluding that, pursuant to Foundry and Zoltek's lease and Foundry's letters to Zoltek, fulfilment of the parties' intentions or other considerations of justice call for exemption of Zoltek from liability for negligent causation of fire damage to Foundry's building. I would reverse the judgment below and remand the case for trial.