Wright, J.
This is a summary process action to recover possession of the defendant’s apartment in a housing cooperative. Judgment was entered for the plaintiff and the defendant tenant filed this Dist/Mun. Cts. RAD.A, Rule 8C, appeal.
The record indicates that plaintiff Pine Grove Village, Inc. (“Pine Grove”) is the owner of a 16-unit housing development in Lexington, Massachusetts. Defendant Barbara Cardullo (“Cardullo”) has resided in a four bedroom apartment in that development for more than twenty-four years, and raised her four children there. In 1981, the development was incorporated as a cooperative in which Pine Grove retained ownership of the real estate, and the tenants purchased shares in the cooperative which entitled them to proprietary leases of their apartments.
Pine Grove is financed in part by a mortgage from the Massachusetts Housing Finance Agency (“MHFA”) and has signed a Regulatory Agreement with that agency. In return for such financing, Pine Grove participates in subsidy programs for low and moderate income housing. All sixteen Pine Grove apartments are classified as either low or moderate income units for subsidy purposes, and the shares in the cooperatives issued to occupants are either low or moderate income shares depending on the classification of their units. There is a significant difference in the redemption or transfer value of low income shares and moderate income shares. The Lexington Housing Authority (“LHA”) determines eligibility for the low income subsidy. When a tenant’s income rises above the maximum level for that subsidy, the tenant’s rent is increased to the moderate income rate, and it is anticipated that the tenant’s low income shares will be sold and moderate income shares purchased. However, as this case demonstrates, the increase in rent does not automatically entail a simultaneous exchange of low income shares for moderate income shares.
In 1981, Mrs. Cardullo executed the necessary stock Subscription Agreement and Occupancy Agreement for her apartment, and was issued low income shares in the cooperative. In 1989, she became ineligible for the low income subsidy, and was reclassified as a moderate income tenant Since that time, she has continued to pay rent at the higher rate and to submit those periodic income reports to Pine Grove which are required by the Occupancy Agreement However, no steps were taken by either side between 1989 and 2000 to exchange Cardullo’s low income shares for moderate income shares.
On March 14, 2000, Pine Grove’s attorney issued a “Notice to Cure” to Mrs. Cardullo informing her that she had failed eleven years earlier to convert her low income shares to moderate income shares; that she was “overhoused” because she was the sole occupant of a four bedroom apartment; and that she was required pursuant to the U.S. Department of Housing and Urban Development Handbook (“HUD Handbook”) either to relocate to a smaller, two-bedroom unit in the development, or to pay market rent for her four bedroom apartment The Notice further advised Cardullo that she had approximately two weeks, until March 31, 2000, to *235 avoid eviction proceedings by completing all of the following: selling her low income shares for her four bedroom unit, purchasing moderate income shares for a substitute two bedroom unit, executing the subscription agreements for those transactions, signing a new occupancy agreement for the two bedroom unit, and physically moving into the two bedroom apartment On March 31,2000, Mrs. Car-dullo hand-delivered a letter to Pine Grove’s counsel stating, inter alia, that she had been out of town until March 24,2000, and that she was not aware of any violations of her tenancy. The letter also requested information about the cost of purchasing moderate income shares and the sale price of her six low income shares.
Pine Grove did not respond to Cardullo’s letter, hut instead issued a Notice to Quit on the same date, March 31,2000. The Notice to Quit recited, in pertinent part
The reason that your occupancy is being terminated pursuant to Article 8 of your Occupancy Agreement... is thatyou have neglected and/ or failed to perform and/or observe the covenants and/or agreements contained in that document in thatyou have violated Article 12(f) by failing to abide by the terms and conditions of the Regulatory Agreement signed by and between Pine Grove Tillage, Inc. and the Massachusetts Housing Finance Agency, which incorporates the terms of the HUD Handbook... in that you have failed to relocate to a suitably sized unit for your household pursuant to both [HUD guidelines and MHFA regulations] ...
Pine Grove commenced a summary process action against Cardullo on August 7, 2000. Judgment for possession in Pine Grove’s favor was entered on December 28, 2000, and this appeal followed.
1. At the close of Pine Grove’s case at trial, Cardullo moved for a Mass. R. Civ. R, Rule 41(b) (2), involuntary dismissal of the action on the ground that Pine Grove had failed to satisfy its burden of proof. At the conclusion of all the evidence, Car-dullo submitted, inter alia, a Mass. R Civ. R, Rule 64A(b) (2), request for ruling that the evidence required a finding in her favor as a matter of law. Upon our review of the transcript of the evidence as well the voluminous documents pertaining to Cardullo’s tenancy, we conclude that her motion and request for riding of law should have been allowed.
In a summary process action, the party seeking possession has the burden of proof. Spence v. Gillis, 16 Mass. App. Ct. 905 (1983). It was incumbent upon Pine Grove to establish that Cardullo committed those violations of the terms of her Occupancy Agreement specifically identified and alleged by Pine Grove in the notice to quit Strycharski v. Spillane, 320 Mass. 382, 384-385 (1946). The only violation alleged in that notice was Mrs. Cardullo’s refusal to relocate to a smaller unit Pine Grove failed, however, to demonstrate that the Occupancy Agreement, or any of its incorporated regulations, guidelines, handbooks or other documents, imposed an actual duly upon Cardullo to relocate upon being apprized that she was “overhoused. ”
2. Pine Grove argues that the duly to relocate can be found in the Occupancy Agreement, Pine Grove’s “Amended and Restated Regulatory Agreement” with the MHFA, the Resident Selection Process attached as Addendum B to the Regulatory Agreement, the MHFA Regulations for the Administration of Section 13(a) Interest Subsidy Programs and the HUD Handbook. Contrary to Pine Grove’s assertion that we are bound by the trial court's implicit findings of fact in its favor, the interpretation of the listed agreements and guidelines presents a question of law well within the parameters of permissible appellate review. See generally, Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995); Vagato v. Commercial Union Ins. Co., 50 Mass. App. Ct. 824, 826 (2001).
Article 8(A) of the Occupancy Agreement provides for termination of a tenancy upon the neglect or failure of the Stockholder (tenant) “to perform or observe any of Stockholders covenants and agreement contained herein....” The Stockholders’ *236 “Covenants” are set forth in Article 4(A), which is devoid of any reference to a duty to relocate. Pine Grove does not rely on Article 4, but contends instead that Cardullo breached the terms of the following unnumbered final paragraph of the Occupancy Agreement, which Pine Grove incorrectly identifies as Article 12(F):
Other terms and conditions as contained in the separate handbook of management rules and regulations[1] the Regulatory and Management Agreements for the housing development as authorized and approved by the MHFA, and the rules and regulations of MHFA are hereby incorporated into and are part of this Occupancy Agreement ...
Thus there is nothing in the Occupancy Agreement itself to support Pine Grove’s case for eviction beyond its references to MHFA rules and regulations.
Turning to those documents, it is immediately clear that the MHFA Regulatory Agreement itself contains no provision relevant to a current resident’s relocation, voluntary or otherwise. Second, Addendum B to that Agreement, the “Resident Selection Process,” expressly limits its own scope to the “processing [of] applicants during the initial rentntp for units in an MHFA development... [emphasis supplied].” Pine Grove points to a statement in section 3 of Addendum B that the MHFA’s “policy [is] that there shall be no fewer than one, nor more than two persons per bedroom” in a unit However, that provision is merely a directive to “the management and MHFA staff to “sort the applications” during the “initial selection” process in compliance with that MHFA policy. Section 3 cannot be rationally construed as imposing any rule, regulation or obligation upon an existing stockholder, already in residence like Mrs. Cardullo, to relocate to another unit eleven years after Pine Grove completed its initial selection process.
Third, the MHFA “Regulations and Handbook for Administration of the Section 13A Interest Subsidy Program” is equally irrelevant Section G(l) of the Handbook does direct that a housing development’s “Tenant Selection Plan must include some method (e.g. an internal waiting list) for relocating current residents who are over-housed or overcrowded or who need to transfer as a reasonable accommodation.” Pine Grove has failed, however, to identify any Tenant Selection Plan incorporating such a relocation provision which was in effect at the time it issued the Notice to Quit to Mrs. Cardullo. The model or “template” form of the MHFA Tenant Selection Han only applies to a housing complex that has adopted it The record indicates that Pine Grove had not adopted that plan up to the time of trial
Finally, Pine Grove relies on the “HUD Handbook,” which actually contains a section governing “overcrowded or underutilized units” resulting, as in Cardullo’s case, from “changes in household composition.” The section expressly and unambiguously states, however, that it “does not apply to Cooperatives.”
Thus there is no provision in the Occupancy Agreement or its incorporated rules and regulations identified by Pine Grove which amounts to a covenant or duty obligating Mrs. Cardullo to relocate to a smaller unit upon notice that she was “overhoused.” As Cardullo could not be found to have breached or violated a term of her Occupancy Agreement which did not exist, it must be held that Pine Grove failed to satisfy its burden of proving such a violation, which was the only ground for eviction set forth in its Notice to Quit
In so holding, we do not suggest that occupation of a four bedroom unit of subsidized housing by a single individual is a satisfactory policy result or one consistent with the spirit of the statutory scheme. The result is dictated solely by Pine *237 Grove’s failure to include relocation provisions in the documents it drafted. Accordingly, the trial courf s judgment for plaintiff Pine Grove Village, Inc. for possession of the cooperative unit in question is vacated, and a judgment in favor of the defendant, Barbara Cardullo, is to be entered.
So ordered.

 Neither party has referred to a “separate handbook of management rules and regulations,” and none is included in the record before us. There is no suggestion in the record that Pine Grove introduced such a handbook into evidence.