SEACO INSURANCE COMPANY[1] *vs.* JAIME BARBOSA & another.[2]

Middlesex. October 1, 2001. - February 5, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Real Property,* Lease. *Landlord and Tenant,* Lease as contract. *Contract,* Lease of real estate. *Insurance,* Fire, Property damage, Subrogation. *Subrogation.*

This court declined to extend to commercial tenancies the rule of *Peterson* v. *Silva,* 428 Mass. 751 (1999), a case involving residential tenancies, that, absent an express provision in a lease establishing a tenant's liability for loss from a negligently started fire, the landlord's insurance is deemed held for the mutual benefit of both parties. [775-779]

In an action brought by an insurer in the name of its insureds against third parties (tenants) for negligently causing a fire that damaged a bakery that the tenants leased from the insureds, a Superior Court judge incorrectly allowed the tenants' motion for summary judgment, where there was a genuine issue of material fact, namely, whether the parties to the lease intended that the tenants should be liable for the fire damage they allegedly negligently caused. [779-781]

CIVIL ACTION commenced in the Superior Court Department on December 28, 1998.

The case was heard by *Ralph D. Gants,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John G. Neylon* for the plaintiff.

*Lawrence A. Dugan* for the defendants.

SPINA, J. Seaco Insurance Company brought an action in the name of its insureds, Joaquim and Candida Barros (insureds), against Jaime and Margarida Barbosa (defendants) for negligently causing a fire that damaged a bakery that they leased from the insureds. Relying on *Peterson* v. *Silva,* 428 Mass. 751

[1]As subrogee of Joaquim Barros and Candida Barros.

[2]Margarida Barbosa, doing business as Padaria Nova Bakery.

(1999), a judge in the Superior Court granted the defendants' motion for summary judgment, holding that Seaco could not recover against them because they were implied coinsureds under the insureds' fire insurance policy with Seaco. Seaco appealed, and we transferred the case to this court on our own motion. We vacate the judgment and remand for a trial because there is a genuine issue of material fact, namely, whether the parties to the lease intended that the defendants should be liable for the fire damage they negligently caused.

1. *Background.* The following facts are undisputed. On February 27, 1995, the insureds and the defendants entered into a lease of a bakery located at 1598 Acushnet Avenue in New Bedford. We recite relevant excerpts from the lease.

"6. *LESSEES' OBLIGATION TO REPAIR*: The LESSEES shall keep the interior of the demised premises in good repair, as they are now, with the exception of major structural repairs undertaken by the LESSORS.

"7. *LESSORS' OBLIGATION TO REPAIR*: The LESSOR shall have the express obligation to make, promptly after the necessity arises, such repairs to the roof and structure and the exterior of the building of which the demised premises are a part, as may be necessary to keep the building in its present state of repair. . . .

"14. *DAMAGE TO PREMISES BY FIRE, CASUALTY OR BY TAKING FOR PUBLIC USE*: . . . [I]n case the said demised premises, or any part thereof, . . . shall be destroyed or damaged by fire . . . then a just proportion of the rent hereinbefore reserved, according to the nature and extent of the . . . injury sustained by the demised premises . . . what may remain thereof shall have been put in proper condition for use and occupation with due diligence by the LESSORS at the LESSORS' sole cost and expense . . . PROVIDED, however, that in case said demised premises, or substantial part thereof, shall be . . . destroyed or substantially damaged by fire . . . then this Lease and the said term shall terminate at the election of the LESSORS . . . and if the Lease shall not be terminated as aforesaid, the LESSORS shall proceed with all expedi-

tion to restore the demised premises to its condition before said fire . . . .

"15. *INSURANCE*: The LESSEES shall provide, at their sole cost and expense, public liability insurance in the amount of $250,000.00 to $500,000.00, *including property damage in the amount of $100,000.00*, and name the LESSORS as additional insured, and including death and personal injury, the LESSEES shall insure all of the contents owned by said LESSEES. The LESSEES shall save harmless and indemnify the LESSORS from any and all liability for any personal injuries sustained by any persons using the demised premises. The LESSORS shall insure against damage to plate glass windows at the premises. If any plate glass is damaged, the LESSEES shall pay up to the amount of $250.00 on each occasion." (Emphasis added.)

The words "including property damage in the amount of $100,000.00," have a line drawn through them and the parties placed their initials in the margin.

"16. *LESSEES' OBLIGATION AT THE END OF TERM*: . . . The LESSEES shall, at the expiration of said term, peaceably yield up to the said LESSORS all and singular the demised premises in such repair as the same are in at the commencement of said term or may be put in by the said LESSORS or its representatives or assigns during the continuance thereof, reasonable wear and use thereof, and such other damage, the obligation to repair which has hereinbefore been specifically provided for in this Lease, only excepted. . . ."

A fire damaged the property on December 2, 1997. Seaco paid $62,178.84 to the insureds under their fire insurance policy, then brought this subrogation action against the defendants, alleging that they negligently started the fire.

The defendants moved for summary judgment, arguing that, because the lease relieved them of any liability for fire damage to the property, they were implied coinsureds under the fire insurance policy, and thus entitled to summary judgment. The judge agreed, concluding that in the absence of a provision in the lease holding the defendants liable for negligently caused

fire damage, they were implied coinsureds, and Seaco "cannot recover by means of subrogation against its own insured," quoting *Peterson* v. *Silva, supra* at 752, quoting *Safeco Ins. Co.* v. *Capri,* 101 Nev. 429, 431 (1985). The judge reasoned that the insureds' obligation under paragraph 14 to repair fire damage, read in conjunction with the exception in paragraph 16 for damage that they agreed to repair, evidenced the parties' intent to exclude fire damage from the defendants' obligation to yield up the property in its original condition. The judge also concluded that the requirement in paragraph 15 that the defendants maintain public liability insurance did not require them to insure the building against fire damage.[3]

2. *Discussion.* Seaco argues that *Peterson* v. *Silva, supra,* which involved residential tenancies, should not be extended to commercial tenancies because public policy considerations favor liability of commercial tenants who negligently cause fire damage to leased premises. Seaco further argues that, even if *Peterson* v. *Silva, supra,* applies to commercial tenancies, it does not apply here because the parties to the lease intended that the defendants would be liable for property damage caused by their negligence. Seaco claims that such intention is evidenced by the requirement in paragraph 15 of the lease that the defendants purchase public liability insurance, which Seaco claims includes insurance against negligently caused fire damage to the building.

In *Peterson* v. *Silva, supra,* a case involving residential tenancies, we held that, "absent an express provision in a lease establishing a tenant's liability for loss from a negligently started fire, the landlord's insurance is deemed held for the mutual benefit of both parties." *Id.* at 753. The holding deviated from the common-law principle that a person is liable for his own negligent acts, absent an express agreement to the contrary. See *Great Atl. & Pac. Tea Co.* v. *Yanofsky,* 380 Mass. 326, 333-334 (1980); *New York, New Haven & Hartford R.R.* v. *Walworth Co.,* 340 Mass. 1, 5-6 (1959). We cited the "realities of apartment renting," specifically, "Prospective tenants ordinarily rely

---

[3]Seaco moved for reconsideration and to supplement the summary judgment record, filing an affidavit of one of its adjusters, who indicated that public liability insurance would have covered damage caused by a negligently started fire. The motion judge denied the motion for reconsideration.

upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or, if there was such protection, it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy." *Peterson* v. *Silva, supra* at 754, quoting *Sutton* v. *Jondahl,* 532 P.2d 478, 482 (Okla. Ct. App. 1975). We also relied on R.E. Keeton, Insurance Law § 4.4(b), at 210 (1971): "Probably it is undesirable, from the point of view of public interest, that the risk·of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely contrary to expectations . . . . [P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous." *Peterson* v. *Silva, supra* at 754. If the "realities of apartment renting" and tenants' "reasonable expectations" provided the impetus for a deviation from the common law affecting residential tenants, then the doctrine of "implied co-insureds" and the principle of waiver of subrogation were joined to form the mechanism that brought about the deviation. *Id.* at 752-753. See 6A J.A. Appleman & S. Liebo, Insurance Law and Practice § 4055 (Supp. 2001).

*Sutton* v. *Jondahl, supra,* on which we relied in the *Peterson* case, involved a residential tenancy. It is the lead case in this area, and represents something of a trend that includes commercial as well as residential tenancies. The cases that follow *Sutton* include commercial as well as residential tenancies, and no distinction is made between the tenancies. See 6A J.A. Appleman & S. Liebo, *supra.*[4] The court in *Sutton* reasoned that "subrogation should not be available to the [insurer] because

---

[4]Courts following the approach of *Sutton* v. *Jondahl,* 532 P.2d 478 (Okla. Ct. App. 1975), include *Alaska Ins. Co.* v. *RCA Alaska Communications, Inc.,* 623 P.2d 1216 (Alaska 1981) (commercial); *Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co.,* 59 Cal. App. 3d 860 (1976) (commercial); *New Hampshire Ins. Group* v. *Labombard,* 155 Mich. App. 369 (1986) (residential); *Rock Springs Realty, Inc.* v. *Waid,* 392 S.W.2d 270 (Mo. 1965) (pre-*Sutton*) (com-

the law considers the tenant as a co-insured of the landlord absent an express agreement . . . to the contrary, comparable to the permissive-user feature of automobile insurance." *Id.* at 482. The court also looked to the insurable interest that the landlord and the tenant each had in the premises, and the common business practice of passing insurance premium costs along to tenants when determining rental rates such that the tenant pays that portion of the premium that is attributable to the rented premises. *Id.*

*Sutton* has nearly as many critics, however, as it has adherents. In *56 Assocs.* v. *Frieband*, 89 F. Supp. 2d 189 (D.R.I. 2000), the court said that decisions rejecting *Sutton* represented the "better reasoned" view because they looked to the terms of the lease to ascertain the intent of the parties. The court was critical of adherents to *Sutton* for rewriting insurance policies by inserting additional coinsureds, and it rejected the view that an insurable interest (leasehold) elevated an individual to a co-insured status. *Id.* at 193. The court also rejected the views that a landlord's use of rental income to pay insurance premiums and a tenant's expectations that the landlord will obtain insurance make a tenant a coinsured. *Id.* at 192-194.[5]

We find the view expressed in *56 Assocs.* v. *Frieband, supra*, to be persuasive, at least with respect to commercial tenancies.

mercial); *Safeco Ins. Co.* v. *Capri*, 101 Nev. 429 (1985) (commercial); *Community Credit Union of New Rockford* v. *Homelvig*, 487 N.W.2d 602 (N.D. 1992) (residential); *United States Fire Ins. Co.* v. *Phil-Mar Corp.*, 166 Ohio St. 85 (1956) (pre-*Sutton*) (commercial); *Fashion Place Inv., Ltd.* v. *Salt Lake County/Salt Lake County Mental Health*, 776 P.2d 941 (Utah Ct. App. 1989) (commercial); *Monterey Corp.* v. *Hart*, 216 Va. 843 (1976) (residential); *Cascade Trailer Court* v. *Beeson*, 50 Wash. App. 678 (1988) (residential). See also *Tate* v. *Trialco Scrap, Inc.*, 745 F. Supp. 458 (M.D. Tenn. 1989), aff'd, 908 F.2d 974 (6th Cir. 1990) (commercial).

[5]Other courts rejecting the *Sutton* approach include *Page* v. *Scott*, 263 Ark. 684 (1978) (rejecting doctrine of implied coinsureds); *Fire Ins. Exch.* v. *Hammond*, 83 Cal. App. 4th 313 (2000) (interpreting rental agreement in its entirety to ascertain intent of parties); *Bannock Bldg. Co.* v. *Sahlberg*, 126 Idaho 545 (1994) (same); *Dix Mut. Ins. Co.* v. *La Framboise*, 149 Ill. 2d 314 (1992) (abandoning requirement of express provision relieving tenant of liability in favor of ascertaining intent of parties from entire lease); *Neubauer* v. *Hostetter*, 485 N.W.2d 87 (Iowa 1992) (rejecting doctrine of implied coinsureds); *New Hampshire Ins. Co.* v. *Hewins*, 6 Kan. App. 2d 259 (1981) (tenant not relieved of liability absent express provision); *Britton* v. *Wooten*, 817 S.W.2d 443 (Ky. 1991) (same); *Osborne* v. *Chapman*, 574 N.W.2d 64 (Minn.

The courts that apply *Sutton* to commercial leases ignore differences between residential and commercial tenancies. See, e.g., *Alaska Ins. Co.* v. *RCA Alaska Communications, Inc.*, 623 P.2d 1216 (Alaska 1981). Commercial tenancies present different circumstances and involve different considerations than their residential counterparts. Commercial tenants tend to be more sophisticated about the terms of their leases and, unlike residential tenants, commercial tenants generally purchase liability insurance. In two recent cases involving subrogated claims against commercial tenants we departed from the common-law requirement that an *express* agreement is needed to relieve a tenant of liability for its negligence, and we looked to the lease terms to determine whether the parties intended that the tenant be relieved of liability for fire damage caused by its negligence.

In *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704 (1995), we affirmed an order of summary judgment for a commercial tenant on a subrogation claim by the landlord's insurer for negligently causing an explosion that damaged the leased premises. The lease did not contain an express provision absolving the tenant from liability but it did contain a yield-up clause requiring the tenant to deliver the premises at the expiration of the lease in good condition, damage by fire or other casualty excepted. The lease also required the tenant to pay fifty-six per cent of certain operating expenses of the landlord, including hazard and liability insurance on the whole of the premises, of which the leased premises were a part. The landlord delivered the lease to the tenant with a cover letter advising the tenant not to obtain property hazard liability insurance because of its contribution to the premiums for the landlord's policy. In the circumstances, the landlord and tenant were held to be coinsureds, thus defeating the insurer's subrogation claims. The result in *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712 (1995), was to the same effect, and based solely on the strength of the yield-up clause, which called on the tenant to deliver the premises at the expiration of the tenancy "in the same condition and repair as the same were in at the com-

1998) (insurance coverage of plaintiff has no effect on liability of defendant for tort).

mencement of the term . . . damage by fire or other casualty
. . . only excepted." *Id.* at 713. We held that this language
constituted an agreement that the landlord and tenant were coin-
sureds, thus defeating the insurer's subrogation claim. These
cases turned on the agreement of the parties that the tenant
would not be liable for fire damage negligently caused by the
tenant.

Because we decline to extend the rule of *Peterson* v. *Silva*,
*supra*, to commercial tenancies, we will look to the terms of the
lease and other evidence to ascertain the intent of the parties.
See *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, *supra*;
*Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, *supra*. We turn to the
lease at hand to ascertain whether the parties intended that the
defendants would be relieved of liability for damage caused by
their negligence.

If a contract, in this case a lease, is unambiguous, its
interpretation is a question of law that is appropriate for a judge
to decide on summary judgment. See *Lexington Ins. Co.* v. *All
Regions Chem. Labs, Inc.*, *supra* at 713; *Lumber Mut. Ins. Co.*
v. *Zoltek Corp.*, *supra* at 707. Where, however, the contract
(lease) has terms that are ambiguous, uncertain, or equivocal in
meaning, the intent of the parties is a question of fact to be
determined at trial. See *Robert Indus., Inc.* v. *Spence*, 362 Mass.
751, 753-754 (1973) (elucidating but not changing or contradict-
ing terms of contract); *Trafton* v. *Custeau*, 338 Mass. 305, 307-
308 (1959). Although uncertainties in an instrument are
normally construed against the drafter, see *Massachusetts
Turnpike Auth.* v. *Perini Corp.*, 349 Mass. 448, 454 (1965), the
defendants offered no evidence to suggest that the insureds
drafted the lease.[6] Ambiguities will not, therefore, be construed
against either party.

The yield-up clause in paragraph 16 states that the lessees
(the defendants) must return the property in its original condi-
tion or be liable for damages. See *Ryan* v. *Boston Hous. Auth.*,
322 Mass. 299, 301-302 (1948). The yield-up clause lacks an
unqualified exception for fire damage, and thus suggests that the

---

[6]Seaco suggests in its brief that the lease was drafted by an attorney retained
by both parties to the lease. The defendants dispute this assertion. Neither
party submitted an affidavit addressing the point.

defendants would be liable for their negligently caused fire damage. Contrast *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc., supra* at 713 (lease specifically excepted fire damage from tenants' obligation to surrender property in its original condition); *Lumber Mut. Ins. Co.* v. *Zoltek Corp., supra* at 706 (same); *Slocum* v. *Natural Prods. Co.,* 292 Mass. 455, 456-457 (1935) (same).

The defendants point to paragraph 14 of the lease, which states that in the event of fire damage, "then a just proportion of the rent hereinbefore [having been] reserved," the lessors (the insureds) would restore the property. The defendants contend that this language, read in conjunction with the yield-up clause, which excepts therefrom "damage, the obligation to repair which has hereinbefore been specifically provided for in this Lease," indicates that the insureds assumed sole responsibility for property damage caused by fire. While such a reading of that clause, in isolation, is plausible, it is unclear from other provisions of paragraph 14 for what purpose rent would be reserved in the event of a fire. That it would be reserved "according to the nature and extent of the [property damage]" suggests that the parties may have intended this clause as a rent abatement provision. Moreover, the obligation to repair may be read independently from other covenants in the lease, see, e.g., *Stone* v. *Sullivan,* 300 Mass. 450, 455 (1938), and does not, by itself, absolve the defendants of liability for fire damage they negligently caused.

To the extent that the defendants suggest that the insureds' obligation under paragraph 14 to repair fire damage was unqualified, the lease is anything but clear on the point. The insureds could terminate the lease in the event of substantial fire damage, in which case they would have no obligation to the defendants to repair the premises. The defendants would then have to yield up the premises in their original condition, so it is anything but clear that the insureds would be liable for the defendants' negligently caused fire damage.[7]

Genuine issues of material fact exist as to the intention of the parties on the question of the liability of the defendants for

---

[7] The record is silent on whether the lease was terminated after the fire.

negligently caused fire damage. The question must be put to a trier of fact. See *Madden* v. *Estin*, 28 Mass. App. Ct. 392, 395 (1990) ("When intent is at the core of a controversy, summary judgment seldom lies").

The judgment is vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*