Wexler, James H., J.
Merrimack Mutual, the insurer, brought this action for subrogation in the name of its insured, Mark D. Horgan, Trustee of Parker Realty Trust, the owner of the real property. Specifically, Merrimack Mutual seeks to recover from the defendants, Montachusett Addiction Council, Inc.[3] (Count I), and Robert Theall (Count II), money it paid for fire damage to the insured property. Defendants filed a Motion for Summary Judgment on both counts asserting that a yield-up clause in the commercial lease between the parties precludes a finding of liability against them. For the following reasons, the defendants’ motion is ALLOWED.
BACKGROUND
Plaintiff, Mark D. Horgan, Trustee of Parker Realty Trust (“Landlord”), is the current owner of the property located at 71 Pleasant Street in Leominster, Massachusetts (“Property”). Landlord alleges that on or about July 23, 2003, defendant, Montachusett Addiction Council, (“Montachusett”), through its agent, servant or employee, Robert Theall (“Theall”), negligently and carelessly disposed of cigarette ashes which caused the Property to be damaged by fire on or about July 23, 2003. Plaintiffs insurer, Merrimack Mutual, paid him $213,847.13 for the properly damage sustained as a result of the fire. The insurer now seeks to recoup those costs through subrogation against Montachusett and Theall.
The Property consists of a three-story commercial building containing approximately 11,000 square feet *483 of leased space, including a residential apartment (approximately 1,200 square feet) located on the top floor and a parking lot. Montachusett leased[4] approximately 3,700 square feet of space on the ground and first floors of the Property (“Leased Premises”) pursuant to a written lease agreement (“the Lease”) dated January 26, 2000. When Montachusett entered the Lease, the Property was owned by Masimos and Sawas Hatziiliades (“the Hatziiliades”), who then sold the Property to plaintiff on or about April 13, 2000. The Purchase & Sale Agreement between the parties indicated that plaintiff purchased the property subject to the Lease with Montachusett. Purchase & Sale Agreement, ¶9.
The duration of the lease between Montachusett and the Hatziiliades was for an initial five-year term with an option for two additional five-year terms. Montachusett was to pay rent in the amount of $18,000 per year payable in monthly installment of $1,500 per month. Pursuant to Lease ¶11A (“Maintenance”) , Montachusett was required to “maintain the leased premises in good condition, damage byjire and other casualty only excepted.” Similar language is also found in the Lease at ¶21 (“Surrender”) in a “yield-up” clause providing, in pertinent part, that:
The LESSEE shall at the expiration or other termination of this lease remove all LESSEE’S goods and effects from the leased premises . . . LESSEE shall deliver to LESSOR the leased premises and all keys, locks thereto, and other fixtures connected therewith and all alterations and additions made to or upon the leased premises, in good condition, damage byjire and other casualty only excepted.
To comply with ¶17 of the Lease, Montachusett obtained comprehensive liability insurance in the amount of $1 million and personal property coverage. Montachusett did not procure separate fire insurance for the entire Property.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving parly may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusoiy statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).
The interpretation of an unambiguous written contract, including a lease, is a question of law decided by the court. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). When a contract (or lease) has terms that are uncertain, ambiguous, or equivocal in meaning, the intent of the parties is uncertain, and a question of fact remains which is reserved for trial. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). Ambiguities in the instrument are generally construed against the drafter. Id.
When interpreting leases, the placement of a yield-up clause generally “leaves no room for the argument that the intent of the parties is a triable issue” and therefore summary judgment lies. Lumber Mutual Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). A “yield-up” clause by definition states, in essence, that the tenant “will ‘peaceably yield up the Demised Premises ... in the same condition and repair as the same were in at the commencement of the term.. . damage byjire and other casualty . . . only excepted.’ ” Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 714 (1995) (emphasis added). Thus, “If [a landlord] intend [s] to exclude from [the] lease with the tenants fires negligently caused, [he] could have inserted such a limitation.” Id. at 714. By not inserting such a limitation, summary judgment for the tenant is generally warranted. Id.
Massachusetts courts have held that a tenant is not liable to a landlord for damage excepted in an unqualified yield-up clause, even if the tenant negligently caused the damage. See Lexington, 419 Mass. at 714 (where a subrogation claim was defeated on summary judgment because the lease contained an unqualified yield-up clause excepting fire damage and essentially made the landlord and tenant co-insureds); Lumber Mutual, 419 Mass. at 707 (same regarding an explosion on the leased premises). Conversely, where no unqualified exception for fire damage exists in the yield-up clause, a tenant may be liable. See Seaco, 435 Mass. at 779-80 (2002) (where clause provided “lessees must return the property in its original condition or be liable for damages,” was without an unqualified exception and suggested tenant liability). Where the tenant is not liable to the landlord, the tenant cannot be liable to the landlord’s insurer in a subrogation action. Lexington, 419 Mass. at 713-14. Cf. Liberty Mutual Ins. Co. v. National Consolidated Warehouses, *484 Inc., 34 Mass.App.Ct. 293, 296-97 (1993) (“When an insurer pays an insured’s claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss”).
Defendant argues that the yield-up clause is dis-positive of the parties’ obligations and that no ambiguity exists that would preclude summary judgment in their favor. Specifically, because the yield-up clause expressly excepted fire damage on the Leased Premises, defendants assert this case is synonymous with Lexington and Lumber Mutual. Plaintiff argues he was not bound by the lease terms because he (1) neither signed the Lease, nor (2) was in privily with the original parties to the Lease. Moreover, plaintiff asserts that even if the Lease was binding, its terms are ambiguous and therefore preclude summaiy judgment.
The plaintiff was bound by the terms of the Lease. First, as soon as title to the Property transferred from the Hatziiliades to the Landlord, a valid assignment followed, including plaintiffs right to rents receivable under the lease, maintenance of the premises, and any underlying liability therefore. Specifically; the Purchase & Sale Agreement between the plaintiff and the Hatziiliades stated in section 9 that “(f]ull possession of said premises including commercial tenants and occupants ... is to be delivered at the time of the delivery of the deed.” Although this language is clear on its face, the court further notes that the plaintiff took additional steps to indicate his intent in making the purchase subject to the Lease. These steps included: (1) striking through the language in the Purchase & Sale Agreement reflecting that he could have taken the Leased Premises “free of all” tenants; (2) adding the phase “including commercial” tenants; and (3) initialing the document immediately above the change. Second, in addition to the clear language in the Purchase & Sale Agreement, the plaintiff testified in his deposition at least three times that he knew he was buying the Property subject to the underlying lease agreement between Montachusett and the Hatziiliades. He further stated that he had ample opportunity to review the lease terms and that no changes were made. Finally, the Lease was in full effect for nearly three years until the date of the fire damage. Therefore, when viewed in its totality, the Lease was binding upon the plaintiff.
The court now turns to the interpretation of the Lease and finds that the yield-up clause is dispositive of this motion pursuant to Lexington and Liberty Mutual. First, the court does not find plaintiffs argument persuasive that the lease type (i.e., whether commercial or residential) alone has any bearing on the Lease’s interpretation. For instance, in Peterson v. Silva, 428 Mass. 751, 753 (1999), the SJC held that “absent an express provision in a [residential] lease, establishing a tenant’s liability for loss from a negligently started fire, the landlord’s insurance is deemed held for the mutual benefit of both parties.” This was true despite the defendants’ obligations to indemnify the landlord from all loss resulting from their carelessness. Id. In Seaco, the SJC was asked to extend the Peterson holding to that of commercial leases and declined to do so. 435 Mass. at 778. Instead, the SJC analyzed the commercial lease in Seaco pursuant to Lexington and Lumber Mutual and “looked to the [commercial] lease terms to determine whether the parties intended that the tenant be relieved of liability for fire damage caused by its negligence.” Id. The Court therefore ignored the lease type, and rather, examined its provisions. Id.
Here, the Lease contained ayield~up clause almost identical to that of Lexington and Liberty Mutual whereby the tenants were to “deliver to the LESSOR . . . the leased premises, in good condition, damage by fire and other casualty only excepted.”[5] As the Court reasoned in those cases, had the Landlord wanted Montachusett to obtain additional fire insurance, it could have insisted an additional policy be obtained. This is especially true considering the Landlord accepted the Property subject to the already existing commercial tenancy; that he reviewed the Lease; and that he affirmatively chose not to modify its terms at any time in the three years before the fire occurred. Furthermore, Montachusett testified that it did not purchase additional fire insurance because the Lease specifically did not require it. However, it did purchase the $1 million policy for comprehensive liability and personal property insurance necessary under the lease terms. Affidavit of Robin Sebastian. The yield-up clause, interpreted consistently with Lexington, Liberty Mutual, and Peterson, existed for the mutual benefit of both parties as co-insureds specifically for the fire damage to the Leased Premises. Therefore, neither the plaintiff, nor his insurer through this subrogation claim, can now assert that Montachusett, or its agent, Theall, are liable for the fire damage.
ORDER
For the reasons stated herein, it is hereby ordered that defendant’s Motion for Summary Judgment pursuant to Mass.RCiv.P. 56 as to both Counts is ALLOWED.

 Formerly Montachusett Alcoholism Council, Inc.

 The record reflects that defendant signed the lease under its former name, Montachusett Alcoholism Council, Inc., with the Property’s prior owners, Masimos and Savvas Hatziiliades. However, the court notes that change of a corporation’s name alone is not dispositive of whether the lease was binding on the parties named here. See Coken Company, Inc. v. Dept. of Public Works, 9 Mass.App.Ct. 586, 587 (1980) (“A mere change in the name of the corporation . . . does not, generally speaking, affect the identify of the corporation, nor in any way affect the rights, privileges, or obligations previously acquired or incurred by it. . . [Rather] The corporation . . . remains and continues to be the original corporation”). Moreover, at hearing, plaintiffs counsel con *485 ceded the latter point; therefore, no further discussion of the corporation’s name change is necessary for purposes of this motion.

 The court notes that similar language existed in the Lease’s “Maintenance" provisions which further supports the parties’ intent that fire damage was specifically excepted. Therefore, plaintiffs argument that ambiguities within the Lease existed is without merit.