Rufo, Robert C., J.
Plaintiff David Sampsel (“Sampsel”) brings this action to recover for personal injuries he allegedly suffered while working on a construction project overseen by Defendants/Third-Party Plaintiffs DJG Construction Corp. (“DJG”) and Cape Southport Associates, LLC (“CSA”). DJG and CSA in turn filed a third-party complaint for indemnity and breach of contract against Third-Party Defendant Whitten Landscaping, Inc. (“Whitten”), a subcontractor on the project and Sampsel’s employer. The matter is before this Court on two motions; (1) DJG and CSA’s partial motion for summary judgment with regard to Count I of the third-party complaint, contractual indemnification, against Whitten and (2) Whitten’s cross motion for summary judgment against DJG and CSA. DJG and CSA contend that Whitten owes them indemnity against Sampsel’s claims based on a plain reading of their subcontractor contract and indemnity agreement. Whitten disagrees, arguing it does not owe the third-party plaintiffs indemnity because Sampsel’s alleged injuries occurred while working on a portion of the project that was not contemplated by the indemnity agreement or subcontract. After a hearing and careful review of the parties’ submissions, this Court concludes that Whitten does owe D JG and CSA indemnity as a matter of law. Whitten’s cross motion for summary judgment is therefore DENIED and DJG and CSA’s partial motion for summary judgment with regard to Count I of the third-party complaint is ALLOWED.
BACKGROUND
This case turns on the interpretation of the indemnity agreement and the subcontract executed by the third-party plaintiffs, DJG and CSA, and the third-party defendant, Whitten. The material facts are not in dispute.
*109 CSA and DJG contracted to work together on a residential building project at 3 Southport Drive in Mashpee (“the property” or “the Mashpee project”), with DJG as the general contractor for construction. DJG hired Whitten to perform the landscaping on the Mashpee project and the two companies executed a Subcontractor Indemnity Agreement on August 30, 2003 (“Indemnity Agreement”), a copy of which is attached to the Third-Party Plaintiffs’ Motion for Partial Summary Judgment as Exhibit F. The Indemnity Agreement applies to work done by Whitten for DJG on all projects, notjust the Mashpee project. On March 1, 2004, DJG and Whitten also executed a subcontract that was specific to the Mashpee project (“subcontract”). The subcontract described the nature of the overall project, including the number of units to be built. The parties do not challenge the validity or enforceability of these two agreements.
On April 30, 2004, Sampsel was employed by Whit-ten as a landscaper and was working at the property. Sampsel fell and allegedly sustained injuries while working on a retaining wall. He alleges that his injuries were the result of a fall caused by the defendants’ failure to maintain safe conditions on the property. He has brought this action against DJG and CSA, who in turn demand indemnity from Whitten.
This Court must take a careful look at the two agreements mentioned above in order to determine whether Whitten owes DJG and CSA indemnity. Paragraph Three of the Indemnity Agreement states in relevant part:
To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless DJG Construction Corp, Cape Southport Associates LLC . . . and any other parties contracting with DJG for whom the Subcontractor is performing work though DJG, against any claims, damages, losses and expenses, including legal fees, arising out of or resulting from performance of subcontracted work to the extent caused in whole or in part by the Subcontractor or anyone directly or indirectly employed by the Subcontractor.
The subcontract specifically incorporates and attaches the Indemnity Agreement and contains its own indemnity provision, at Paragraph IV(B), which states:
The Subcontractor hereby agrees to indemnify and defend (with counsel reasonably acceptable to the Contractor) the Contractor, Owner, Southport on Cape Cod Condominium Association, Inc. and their respective successors, partners, employees and agents from and against all costs, claims, expenses and liability (including reasonable attorneys fees) relating to the Subcontractor’s performance of the work wider this Agreement (Emphasis added.)
The subcontract does not define the phase “the work under this Agreement” used in the indemnity provision. However, Whitten contends that “work under this Agreement” is the equivalent of “scope of work,” a phrase which is defined in the subcontract. Paragraph 11(A) of the subcontract directs the reader to an exhibit for a definition of “scope of work.”[2] Exhibit A-1 to the subcontract defines “Scope of Work for Whitten Landscaping.”
Subcontractor shall be required to perform all landscaping services necessary to complete the landscaping element of the project pursuant to and as set forth in the construction documents generated by Hawk Design dated 11/28/2003 and revised 12/3/2004, sheet L-5. These services shall include, but shall not be limited to, the tasks set forth in the proposal submitted on February 19, 2004 by Kenneth Wilson of Whitten Landscaping, Inc. a copy of which is attached hereto and is incorporated by reference. (Emphasis added.)
The construction document referenced above, sheet L-5, is attached to Third-Party Plaintiffs’ Motion for Partial Summary Judgment as Exhibit I. It is a landscape plan, including a list of plants, methods of planting, and a drawing of the project site demonstrating landscaping work to be completed by Whitten. The retaining wall that Sampsel was working on when he was allegedly injured is depicted on the document, but the plan is silent with regard to whether Whitten was expected to build the wall. There is a notation to “see engineers [sic] plan for proposed wall information.”
Whitten’s proposal, referenced in Exhibit A-l (supra), “Scope of Work for Whitten Landscaping,” is dated February 19, 2004 and is four pages long. The cover letter states, “This proposal is to landscape your buildings as per the diagrams provided by Bart Lipinski from Hawk Design on December 3, 2003.”[3] The cover letter goes on to list Whitten’s range of offerings: “We specialize in both commercial and residential landscape maintenance and construction and have all equipment necessary to complete any aspect of landscaping.” A Whitten representative, Ken Wilson (“Wilson”), testified at his deposition that his company advertises its ability to construct retaining walls. Whitten’s proposal contains estimates for the installation of walkways, plantings, irrigation systems, loam, and hydroseed for several of the project’s buildings. It does not refer to or contain an estimate for retaining wall construction.
The compensation clause of the subcontract provides that Whitten would be paid according to the February 19, 2004 revised estimate and that *110 Whitten constructed the retaining wall at DJG’s request and without executing a written change order.
*109 [a]ny change orders shall not be binding unless reduced to writing and signed by the parties. Absent such signed written agreement, all work performed by the Subcontractor in connection with the Project shall be conclusively deemed to be part of the Scope of Work and shall be provided without additional compensation.
*110 DISCUSSION
I. Standard of Review
Summary judgment is granted when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422(1983). The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case, Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006) (quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
A contract dispute may be resolved at the summary judgment stage when the contract is unambiguous because in that case, its interpretation is a question of law. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).
II. Analysis
This case requires the Court to interpret the contracts executed by the parties to these motions to determine whether the indemnity clauses contained therein apply to the circumstances of Sampsel’s alleged injuries. “Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties’ intention.” Shea v. Bay State Gas Co., 383 Mass. 218, 222-23 (1981), quoting United States v. Seckinger, 397 U.S. 203, 213 n.17 (1970). Nevertheless, there are some near universal rules of contract interpretation. One such rule is that a court should interpret contract language “in accordance with its generally prevailing meaning.” Restatement (Second) Contracts, §202(3)(a). If the wording of the contract is unambiguous, the contract must be enforced according to its plain meaning. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). Awritten contractis to “be fairly and reasonably construed to ascertain the intention of the parties and to effectuate their purpose.” Whittle v. Pagani Bros. Construction Co., Inc., 383 Mass. 796, 798 (1981).
Whitten contends that the construction of the retaining wall was not part of the work contemplated by the Indemnity Agreement or the indemnity provision of the subcontract and it therefore need not indemnify DJG and CSA against Sampsel’s claims. DJG and CSA disagree, arguing that any work done by Whitten on the Mashpee project was work contemplated by the Indemnity Agreement or the indemnity provision of the subcontract. There are no material facts in dispute. The question is one of contract interpretation. The contracts at issue here are unambiguous and the issue may therefore be decided on summary judgment as a matter of law. See Seaco Ins. Co., 435 Mass. at 779.
A careful and logical reading of the applicable language in the two agreements reveals that Whitten owes DJG indemnity for Sampsel’s injuries. The Indemnity Agreement alone is not enough to settle the question. It requires Whitten to indemnify DJG against losses “arising out of or resulting from performance of subcontracted work.” Therefore, the agreement only applies if the retaining wall project was subcontracted work, which is the crux of the parties’ dispute. The language of the subcontract is the key. It requires Whitten to indemnify for “the work under this Agreement.” As mentioned above, that phrase is not defined in the contract. At first glance, it might seem that “the work under this Agreement” could be a separate set of activities from “the scope of work,” a phrase which is defined in the subcontract. However, this Court cannot discern a logical reason why the two phrases would refer to different sets of tasks. In addition, there are no clues in the text of the agreement that would suggest that “scope of work” means anything other than “the work under this Agreement.”
The “scope of work” is defined as “all landscaping services necessary to complete the landscaping element of the project pursuant to and set forth in the construction documents generated by Hawk Design . . . sheet L-5.” Sheet L-5 shows the retaining wall. Whether a retaining wall is included in “landscaping services” might be a question of fact but for three pieces of uncontested evidence. First, the cover letter from Whitten to DJG containing its estimate for the Mashpee project states that Whitten “specialize[s] in both commercial and residential landscape maintenance and construction and have all the equipment necessary to complete any aspect of landscaping” (emphasis added). Second, Whitten’s representative Wilson testified at his deposition that Whitten advertises its ability to build retaining walls as part of its landscaping business. Third, the “scope of work” provision explicitly states that the scope of work is not limited to the tasks set forth in Whitten’s proposal/estimate. Thus, Whitten cannot claim that construction of a retaining wall was beyond the limits of the “landscaping services” described in the subcontract.
Finally, Whitten contends that because it was not paid to construct the retaining wall, the retaining wall could not have been part of the contracted-for work encompassed by the indemnity agreement and subcontract. However, the compensation clause of the subcontract is clear that unless a change order is drafted and signed by the parties, all of Whitten’s work on the project is encompassed by the existing fee agreement. The parties did not execute a change order with regard to the retaining wall. Therefore, the retaining wall was part of the scope of work described by the subcontract agreement and Whitten owes the third-party plaintiffs indemnity.
*111 ORDER
For the foregoing reasons, the Third-Party Plaintiffs DJG Construction Corp. and Cape Southport Associates, LLC’s Motion for Partial Summary Judgment against Third-Party Defendant Whitten Landscaping Inc. with regard to Count I of the Third-Party Complaint (contractual indemnification) is ALLOWED and Third-Party Defendant Whitten Landscaping Inc.’s Cross-Motion for Summary Judgment is DENIED.

 Paragraph 11(A) of the subcontract states, “The Subcontractor’s scope of work and schedule for such work is attached hereto as Exhibit A-l and is incorporated by reference as if set forth fully herein.”

 Here, Whitten’s letter refers to an outdated version of Hawk Design’s diagrams, but the parties do not dispute that they agreed that Whitten would complete the work described in the revised diagram, dated December 3, 2004 and styled “L-5.”