ABEL PAGE & another *vs.* DAVID G. BENT & others.

Where a defendant sets up the plaintiff's release of the demand in suit, and the plaintiff seeks to avoid the release on the ground that he was induced to make it by the misrepresentations of the defendant concerning his assets, &c. the burden of proof is on the plaintiff, and he must show that such misrepresentations were intentional. Undesigned misrepresentations, in such case, will not render the release void.

THIS case was tried before *Wilde*, J. and a verdict was returned for the defendants, under the instructions of the judge in matter of law. The plaintiffs moved for a new trial, on the ground that those instructions were erroneous, and also that the verdict was against the evidence. The facts of the case are fully exhibited in the opinion of the court.

*B. Rand*, for the plaintiffs, cited *Boynton* v. *Hubbard*, 7 Mass 119. *Fuller* v. *Abrahams*, 3 Brod. & Bing. 116. *Waldo* v. *Martin*, 4 Barn. & Cres. 319. *Cooling* v. *Noyes*, 6 T. R. 263. *Joice* v. *Taylor*, 6 Gill & Johns. 54. *Hutchinson* v. *Morley*, 7 Scott, 341.

*Ellis G. Loring*, for the defendants, cited the cases referred

to in the opinion of the court, and also *Speiglemyer* v. *Craw-ford*, 6 Paige, 256. *Oneida Manuf. Society* v. *Lawrence*, 4 Cow. 443. Yelv. (Amer. ed.) 21 *b*, *note*. 1 Story on Eq. § 193. *Freeman* v. *Baker*, 5 Barn. & Adolph. 797. *Cross* v. *Peters*, 1 Greenl. 376. *McDonald* v. *Trafton*, 3 Shepley, 225. *Tunno* v. *Fludd*, 1 McCord, 122. *Irving* v. *Humphrey*, 1 Hopk. 284. *Kain* v. *Old*, 2 Barn. & Cres. 634. *Rowntree* v. *Jacob*, 2 Taunt. 141. *Stevens* v. *Webb*, 7 Car. & P. 62.

SHAW, C. J. This is an action by the plaintiffs, residing in this Commonwealth, against a mercantile firm in Philadelphia, to recover the amount of a promissory note, and also money on account for goods sold. The defence relied upon is a release, which was executed by the plaintiffs in consideration of an assignment made by the defendants, in 1832, to trustees, for the benefit of their creditors, on the occasion of their insolvency. The plaintiffs seek to avoid the effect of this release, by showing that it was obtained by false and fraudulent representations, made by the assignors, as to the nature and amount of their assets, and the incumbrances upon them. The representations referred to were contained in a letter addressed by the defendants to a Mr. Chase, soon after their assignment was prepared, in which they requested him to show it to several of their creditors named, including Page & Kimball, the plaintiffs, with a request to them to execute the assignment, which was sent on about the same time for that purpose ; and the letter was shown to the plaintiffs accordingly.

The plaintiffs relied mainly upon two representations as false in fact, and calculated to deceive them : *First,* by overstating the amount or value of the defendants' stock in trade : *Secondly,* by stating the amount of preferred debts as less than it really was.

In regard to the first, it appears that the debtors stated their stock in trade at $ 7500, whereas it had been in fact appraised by official persons under oath, appointed for that purpose, at $ 4500, and the debtors knew of this appraisement. If this was a mistake, it might have been an unintentional one, and accounted for, without imputing fraudulent motives to the debtors. It was not an assertion of the fact, that the stock was worth that

sum, or that it would bring that sum in cash.  It was a matter of estimate and judgment, and looked to the future, and must have been so understood by the creditors.  The manner in which the representation was made was this : In an enumeration of their assets, is this item, " Stock on hand $7518·03." The probability is that this was taken from their books, as the result of their stock account.  If this was so, and would be naturally so understood by persons conversant with accounts, then it was a statement of the balance of their books, without reference to the value of the stock ; and if the account of stock was fairly taken, in the manner in which traders usually take and keep similar accounts, and the balance was truly stated, (and there is no evidence that they were not,) then there was no false representation in this matter.  These were matters of fact for the jury.

In regard to the other alleged misrepresentation, it appears that the defendants represented the amount of preferred debts, under the assignment, at $42,000 ; but in fact, a considerable amount of their securities and effects was pledged for debts, which must be paid in order to redeem them ; which in effect gave the holders the advantage of preferred creditors ; and that, including these, the preferred debts exceeded the amount mentioned.

If this were done for the purpose of deception, and the plaintiffs had no means of correcting the statement, and were in fact deceived and misled by it, it would be strong evidence of fraud. As where a father, upon application, had stated that his son had a capital of his own of £300, when in fact he had only £300 which his father had lent him, taking his note on demand with interest for the amount, it was held to be a false and fraudulent representation.    *Corbett* v. *Brown*, 8 Bing. 33.

But, in the first place, the representation was, in terms, of the amount of creditors' claims preferred *by the assignment*, and it is not suggested that this was not literally true.   Still it might be fairly urged to a jury, that representing an amount of assets, as applicable to the general purposes of the assignment, which were pledged to a large amount, had a strong tendency to mislead the creditors.   To obviate this conclusion, however, t ap-

pears that in fact the letter referred to the assignment, which stated that many of the assignors' notes were pledged for money ; and it was understood that the creditors would read and examine the assignment, and understand its purport, before they signed. In fact the plaintiffs examined the assignment, and this subject of the pledged notes was the subject of conversation between them and Mr. Thayer, the agent of the defendants, who exhibited the assignment to the plaintiffs for their signature.

The question then is, whether in fact there was a fraudulent intent and purpose to deceive, and whether the party was misled, or induced to forego further inquiry, by the representation. The principle is well settled, that if a person make a representation of a fact, as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is not true ; if the party to whom it is made relies and acts upon it, as true, and sustains damage by it, it is a fraud and deceit, for which the party making it is responsible. Nor is it necessary to prove, in such case, that the party making it had any interest of his own to subserve by it ; the act is wrong and injurious, and the conclusion of law is, that it was done *malo animo. Foster* v. *Charles,* 6 Bing. 396. *S. C.* 7 Bing. 105. *Polhill* v. *Walter,* 3 Barn. & Adolph. 114. *Hazard* v. *Irwin,* 18 Pick. 95.

But in a matter of opinion, judgment and estimate, if one states a thing as of his own knowledge, if he in fact believes it, and it is not intended to deceive, it is not a fraud, although the matter thus stated is not in fact true. The reason is, that it is apparent from the subject matter, that what is thus stated as knowledge must be considered and understood, by the party to whom it is addressed, as an expression of strong belief only, because it is a subject of which knowledge, in its strict sense, cannot be had. *Haycraft* v. *Creasy,* 2 East, 92. *Lord* v. *Colley,* 6 N. Hamp. 99. *Tryon* v. *Whitmarsh,* 1 Met. 1.

Such being the rule of law in regard to the effect of fraudulent representations, the only question which can arise in applying it to the present case is, whether the jury were rightly instructed in point of law, and whether their finding was warranted

by the evidence. The jury were instructed, that to avoid the release, the burden of proof was upon the plaintiffs ; that if an intentional misrepresentation of their affairs had been made by the defendants, the release thereby procured would be void ; but if such representation was not made designedly, it would not have that effect.

This instruction, we think, was sufficiently favorable to the plaintiffs. As to the amount of the stock in trade, it was matter of estimate and judgment, if not to be considered as a statement from their books ; and in either aspect could only be considered as evidence to be left to a jury, as proof of actual fraudulent intent ; and without proof of such intent could not avoid the release. The statement of preferred debts, so far as it was the assertion of a fact, was true ; but if not so, it would be corrected by the assignment, which was referred to. So far as it was evidence bearing upon the question of actual intent to deceive, it could only be left to the jury, and it was so left.

Under this direction, the jury found a verdict for the defendants, thereby negativing any fraudulent intent, and holding the release valid ; and we see nothing in the report of the evidence to induce a belief that this verdict was not right.

*Judgment on the verdict.*