McCann, J.
INTRODUCTION
Plaintiff USS Industrial Park Associates LLC (USS) is represented by Alvin S. Nathanson, Esq. The defendant Mid-States Packaging and Distribution, Inc. (Packaging) is represented by Kevin P. O’Flaherty, Esq. and Pamela L. Signorello, Esq.
The complaint is for summary process for repossession of commercial property. The original action was brought by USS against Packaging. An adverse finding was entered against USS in the district court. USS appealed to the Superior Court pursuant to G.L.c. 239, 5 under which a plaintiff is entitled to a trial de novo. The matter was scheduled for trial and heard by this Court on March 9 and 31, 2004.
PROCEDURAL BACKGROUND
A summary process action commenced in the district court. On March 18, 2003, the district Court allowed a motion for summary judgment in favor of defendant Packaging. Plaintiff USS appealed to the Superior Court for a trial de novo. A Motion for Summary Judgment was similarly filed in the Superior Court and denied by this Court on February 6, 2004. The matter was set down for trial.
FACTS
On January 1, 2001, USS as landlord leased to Packaging as tenant under a written commercial lease agreement the premises located at 1032-1060 Millbury Street, Worcester, Massachusetts. The lease commenced January 1, 2001.
The premises consists of 37,425 square feet out of a total of approximately 611,616 square feet of space in a commercial building and surrounding land. The initial term of the lease is five years, January 1, 2001 through December 31, 2006. The lease provides that Packaging shall have the right to extend the term of the lease for three successive terms of five years each.
The base rent under the lease for the first five-year term is $164,670 per year or $13,722.50 per month. Under the terms of the lease, Packaging is to pay all charges for water, sewer, gas, electricity, telephone and other utilities or services used or consumed on the premises. Furthermore, Packaging is required to pay to USS a proportionate share of the real estate taxes attributable to and assessed against the property on which the premises are located. Also under the lease, Mid-States is to pay as “additional rent” a share of the “operating cost” incurred by USS during the term of the lease.
USS regularly invoiced Packaging from January 1, 2001 on a monthly basis for all rent and other charges due under the lease.
Section 2.2 of the lease provides as follows:
2.2 APPURTENANT RIGHTS. Tenant shall have, as appurtenant to the Premises, the non-exclusive right to use in common with others, and subject to the terms of any easement agreements, all railroad *719 tracks located on the Property and servicing the Building (collectively, the “Railroad Tracks”). Landlord makes no representation concerning the condition of the Railroad Tracks and Landlord shall have no obligation to maintain or repair the Railroad Tracks. Tenant’s use of the Railroad tracks shall be at its sole risk. Tenant shall pay demurrage charges for any rail car stored on the Property by Tenant in connection with the Premises or with any other premises on the Property leased by Tenant at the standard demurrage rates charged, from time to time, by the Providence & Worcester Railroad, the current demurrage rates being attached hereto as Exhibit C. Notwithstanding the foregoing, Tenant may, at all times, keep on the Properly, without the payment of demurrage charges, one railroad car at Tenant’s loading docks (either at the Premises or any other premises at the Property leased by Tenant) and one additional railroad car on the spur tracks in the proximity of Tenant’s Premises. All demurrage charges shall be determined by Landlord in its reasonable discretion and shall be payable by Tenant within thirty (30) days of receipt of an invoice from Landlord for such demurrage charges.
Demurrage under the lease was supplemented by an attachment and is in essence a charge for days that Packaging had railroad cars, either empty or full, on the tracks located on the property of USS and contiguous to the building occupied by Packaging. USS compiled daily reports from its security company regarding the number of railroad cars that were on the tracks in question. Notwithstanding the aforesaid, even though USS did bill monthly for its monthly rent and other charges under the lease, USS did not invoice Packaging for any so-called demurrage charge until April 22, 2002, approximately fifteen months after the commencement of the lease.
Black’s Law Dictionary defines “demurrage” in pertinent part as follows:
With respect to railroads a charge extracted by a carrier from a shipper or consignee on account of a failure on the latter’s part to load or unload cars within the free time prescribed by the applicable tariffs; the purpose of the charge is to expedite theloading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest.
Demurrage charges are assessed by railroads to induce persons or entities holding certain types of railcars on certain types of tracks to release or accept the cars in a timely fashion. The demurrage rate chart of Providence & Worcester Railroad attached to the lease provides in footnote 4 that private cars on private tracks are generally not subject to demurrage charges.
Private cars are any railcars not owned by the charging railroad and private tracks are tracks not owned by the charging railroad. USS is not a railroad. Railcars are labeled with an eight-character alphabetical/numeric identifier, e.g. “AMCX4813.” Private cars are designated by an X in the identifier number. USS kept track of railcars on the property by having its security personnel compile a daily log of the railcars on the property listed by their alphabetical/numeric identifier. USS compiled a daily log of railcars that were on the property at various times between January 1, 2001 and February 2, 2003. USS claims that Packaging owes it $117,880 in demurrage charges for the dates that there were cars on the tracks of USS which USS claims were railroad cars of Packaging.
The demurrage chart provides in footnote 5 that empty private cars stored on railroad or private tracks are exempt from demurrage charges. The railroad tracks are on the property of USS and are private tracks. No account was given to the demurrage charges which were assessed against cars that were empty or full but are purported charges to Packaging without regard to whether the railcars were private or empty.
Packaging disputes the demurrage charge and has refused to pay the $117,880. After USS invoiced Packaging on April 22,2002, fifteen months after the initial lease commenced, fordemurrage charges there was an exchange among counsel for both USS and Packaging in regard to the demurrage chart and their respective interpretations of it.
At all relevant times, other tenants besides Packaging leased portions of the property and had the right to also use the railroad tracks located on the property. During the relevant period, Mid-States Warehousing (Warehousing) had a separate lease with USS for a portion of the property. Under its lease with USS, Warehousing had a right to similarly use the railroad tracks and brought railcars onto the tracks and kept them on the tracks in connection with its operation. Conversely though, the lease between Warehousing and USS did not assess so-called demurrage charges. USS in computing its calculations did not account or make any allowance for the railcars that might have been on the property and owned by Warehousing or by any other third party. In fact, USS had no information to enable it to determine which railcars which were brought onto the property were those of Packaging, Warehousing, or any other third party.
Providence & Worcester Railroad Company has not invoiced USS for any demurrage charges for railroad cars stored on the property, nor has any other railroad company.
During all of the same relevant times, Packaging leased from Providence & Worcester Railroad Company a storage yard known as the Greenwood Yard which is contiguous to the leased premises. Packaging had the right to store approximately 200 cars on the Greenwood Yard property and, while stored there, are not subj ect to demurrage charges. It is a simple matter for Packaging to move its railroad cars from USS tracks onto the Providence Railroad tracks.
*720 RULINGS OF LAW
The issue in this case is the interpretation and application of 2.2 of the lease and whether Packaging has breached 2.2 of the lease entitling USS to possession of the premises. It is noted that demurrage is not classified as “rent” or “additional rent” under the terms of the lease.
A contract must be construed in light of its plain terms, understood in their ordinary usage. When used in the lease in question in the context of railroads and railcars, the word “demurrage” is to be construed as having the following commonly accepted meaning: “With respect to railroads a charge exacted by a carrier from a shipper or consignee on account of a failure on the latter’s part to load or unload cars within the specified time prescribed by the applicable tariffs; the purpose of the charge is to expedite the loading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest. St. Louis, Southwestern Ry. Co. v. Mays, D.C. Ark., 177 F.Sup. 182, 183.” Black’s Law Dictionary, 432 (6th Edition 1991).
Demurrage is typically assessed by a railroad or other carrier against a consignee of the carrier’s property.
USS could have included demurrage as “additional rent” but for reasons not made known to the Court, did not do so. It tracked railroad cars remaining on its property over a period of fifteen months and yet neglected to bill monthly for those charges. Instead, it waited until fifteen months had passed and then invoiced its first bill in excess of $100,000.
The plain language of 2.2 is clear that it is not intended to create additional rent. The Court construes it to be a passthrough included in the lease to ensure that to the extent that any demurrage charges are somehow billed to USS, by a railroad company, that such charges would be the responsibility of Packaging and not USS.
Furthermore, the demurrage chart expressly provides that private cars on private tracks are not generally subject to demurrage charges. USS has established all cars for which it seeks demurrage charges were private cars on private tracks and this Court finds them exempt. Furthermore, the demurrage charges exempt empty private cars stored on private tracks. USS established that in calculating and assessing the demurrage charges, it did not attempt to determine whether the railcars for which it seeks demurrage costs were full or empty and in fact had no way of ascertaining that. Therefore, any assessment of damages if they were owed, and this Court finds that none have been established, would be based solely on suspicion and conjecture and not on fact.
Interpretation of a written lease is a question of law for the Court and the language must be construed in its usual and ordinary sense. Lumberman’s Mut. Cas. Co. v. Voltek Corp., 419 Mass. 704, 707 (1995), Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 43 Mass. 373, 376 (2001).
In interpreting a contract, language that is doubtful or ambiguous is to be construed most strongly against the drafter, and the drafter is held to any reasonable interpretation relied on by the other party. Merrimac Valley Nat’l Bank v. Baird, 372 Mass. 721, 723-24 (1997). In resolving any ambiguity, if any, one party’s subjective, secret and uncommunicated views cannot be considered. Donoghue v. IBC USA, Inc., 70 F.3d, 206, 212 (1st Cir. 1995); Champlin v. Jackson, 317 Mass. 461, 464 (1945).
A contract provision is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. However, the mere fact that parties disagree on the proper construction of contractual language does not necessarily establish ambiguity. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998); Lumberman’s Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
When an element of ambiguity does appear in a contract, the court will consider the entire instrument and the general scheme it reveals in order to determine the significant meaning of an ambiguous term, if any. The object of the court is to construe the contract as a whole, in a reasonable and practical way consistent with its language, background and purpose as to give it effect as a rational business instrument. Such interpretation is still a matter of law for the court accepting so far as it may turn on facts in genuine dispute. MacDonald v. Gough, 326 Mass. 93, 96 (1950); USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989); Star v. Fordham, 420 Mass. 178, 192 (1990).
USS has failed to present credible evidence that all the railcars which were on the property were owned by Packaging. The Court does not find credible the assessment of USS in view of the fact that if owed, it did not assess an invoice for a period of fourteen months after the assessment was in excess of $100,000. Furthermore, the demurrage chart attached to the lease in two instances specifically exempts private cars on private property. Furthermore, for the reasons previously stated, the assessments calculated by USS are based on nothing but sheer conjecture and speculation without any basis in fact. The Findings and Rulings of this Court are not in any way to give any credence that in fact there is a viable demurrage assessment, as this Court finds that there is none.
This Court does not find that there is an ambiguity in the lease but simply interprets what appeared to be very clear provisions of a lease agreement.
If, upon further review, it is determined by other courts that there may an ambiguity, this Court would then rule that such ambiguity must be construed *721 against USS, the drafter of the lease, and this Court would do so.
For the reasons stated, the complaint for Summary Process of the plaintiff USS Industrial Park Associates LLC against Mid-States Packaging and Distribution, Inc. is DISMISSED.
ORDER
The Complaint for Summary Process by USS Industrial Park Associates LLC against Mid-States Packaging and Distribution, Inc. is DISMISSED and Judgment shall so enter.