Leibensperger, Edward R, J.
This is a relatively straightforward action by a commercial landlord against a commercial tenant for unpaid rent and other charges. The plaintiff is the sublandlord (Landlord) and the defendant is the subtenant (Tenant) under a Sublease (Lease). Despite claims of unfair business practices under G.L.c. 93A, §11, by both sides, the dispute is of the “garden variety” in that the Tenant simply has not paid the amounts due under the Lease.[1] The Court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
The Landlord entered into a Lease with the Tenant dated January 18, 2008. It is a sublease because the Landlord leased an 88,000 s.f. warehouse pursuant to a master lease. The Landlord then subleased space within the warehouse. The Lease was for approximately 12,000 s.f. The term of the Lease was from January 25, 2008 to January 31, 2011.
The parties offered the Lease into evidence as Exhibit 2. They stipulated to the fact that a Lease was entered into and they stipulated to Exhibit 2. During the trial, the Tenant attempted to cast some doubt as to whether Exhibit 2 was, in fact, the actual lease entered into by the parties. The Tenant pointed out that there is a footer on each page of Exhibit 2 with the date 1/25/08, while the signature page of Exhibit 2 has a footer with the date 1/15/08, and the handwritten date next to the signatures is January 18, 2008. The Landlord representative testified that Exhibit 2 is a true copy of the Lease and the footer dates merely reference when the pages were reprinted. The Tenant offered no alternative version of the Lease despite testimony that it has a copy of the Lease in its files. I find that Exhibit 2 is a true and accurate copy of the Lease that existed between the parties.
The Lease provides for a Gross Rent of $2,250 per month for the first 4 months, and $5,500 per month for the rest of the term. In the Lease, Gross Rent is defined to “include Base Rent and cost for Janitorial services within the common areas, Real Estate Taxes, Exterior Maintenance, Common Area Utilities and Building and Property Liability Insurance.” The Lease also provides for Additional Rent. Under that provision, the Tenant is responsible for utility costs applicable to the leased premises, a proportionate share of snow removal charges, and a share of any additional real estate taxes above the 2007 base year. The Lease explicitly allocated 17.4% of such charges incurred by the Landlord as the Tenant’s “proportionate share.”
The Landlord submitted into evidence a ledger indicating amounts owed and paid by the Tenant from the inception of the Lease to date. On the basis of the ledger and the testimony of the Landlord’s representative, the Landlord claims that it is owed $68,390. The Landlord acknowledges, however, that it holds $11,000 as a security deposit that must be applied to the amount owed by the Tenant.
When the term of the Lease ended on January 31, 2011, the Tenant did not vacate the premises. On February 4, 2011, the Landlord gave written notice to the Tenant that it intended to charge “holdover” rent for the period following the end of the lease term on January 31, 2011. Pursuant to paragraph 3 of the Lease, if the Tenant fails to vacate the premises upon the termination of the Lease, “the Subtenant will be subject to a holdover lease rate of two times the current monthly rent until Subtenant has completely vacated the premises." The Landlord presented evidence, essentially uncontroverted, that the Tenant did not depart from the premises until March 31, 2011. Accordingly, the Tenant is liable to the Landlord for the holdover rent in the amount of $22,000.
The Landlord received a security deposit from the Tenant in the amount of $11,000. The Landlord held the security deposit in its operating account throughout the term of the lease and still holds it currently. The Lease, paragraph 8, does not require that the Landlord apply the security deposit to amounts payable by the Tenant during the course of the Lease period. I find, however, that once the Tenant vacated the property on March 31, 2011, the Landlord should have applied the security deposit to the amounts owed by the Tenant so as to reduce ongoing late charges and interest owed by the Tenant.
The amount shown on the Landlord’s ledger for past due Gross Rent and Additional Rent is $34,988. That amount includes $12,988 for past due Additional Rent, and $22,000 for “holdover” rent for the months of February and March 2011.1 find that the Landlord is entitled to recover the full amount of $34,989, less the application of the security deposit.
*504 The Tenant disputes that the Landlord is entitled to receive the Additional Rent. The Tenant did not contest the specific charges shown on the Landlord’s ledger or the method of calculation shown on the ledger. It obj ected, however, to having liability for those amounts. I address the Tenant’s objections and find, based upon my own calculations, that some of the Landlord’s claim is not warranted by the evidence.
I.Additional Rent
Each month the Landlord billed the Tenant for amounts owed as Additional Rent as described in paragraph 7 of the Lease. For the first fourteen months of the Lease, the Tenant paid the Additional Rent charges. Commencing in April 2009, and continuing thereafter, however, the Tenant refused to pay Additional Rent. The Tenant contends that it had only agreed to pay Gross Rent. This contention is, of course, belied by the explicit terms of the Lease. Accordingly, I find the Tenant is liable for the Additional Rent charges as set forth in the ledger in the amount of $12,988.
II.Late Charges
The Lease provides in paragraph 6 that payment by the Tenant more than three days after the date payment is due subjects the Tenant to a late charge of 5% of the overdue amount. From the very beginning of the lease term, the Tenant consistently paid late. Nevertheless, the Landlord did not assess late charges until August 2009.1 find that the Landlord is entitled under the Lease to assess late charges. The amount of late charges accessed through the term of the Lease ending January 31, 2011, is $2,635. In February and March 2011, the Tenant did not vacate the premises and did not leave the property in proper condition. Late charges of $2,675 were incurred by the Tenant for that period. The Landlord, however, in its ledger assessed $24,491 of late charges for a period of fourteen (14) months from February 2011, to the month of trial, March 1, 2012. I find that, in that calculation, the Landlord double counted the late charges for two months. In addition, the Landlord could have, and should have, applied the security deposit of $11,000 to reduce the amount owed by the Tenant starting on April 1,2011, when the Tenant no longer occupied the premises. Adjusting for those errors, the amount owed for the twelve months in late charges for the period April 1, 2011 to March 1, 2012 is $1,199 per month. Accordingly, the total amount owed by Tenant to the Landlord for late charges is $14,388 for the twelve (12) months before trial, plus $5,310 ($2,635 + $2,675) for the period of occupancy, for a total of $19,698.
III.Interest
The Landlord’s ledger claims that interest owed by the Tenant through March 1, 2012 is $3,601. The Lease provides, in paragraph 6, that the Landlord may charge interest on delinquent amounts at the prime rate, plus 4% per annum. At trial, the Landlord’s representative testified that the prime rate plus 4% at the time of trial is 7.25%. No evidence was offered by the Tenant to contest that amount. Thus, I find that the Landlord’s calculations of interest at 7.25% to be appropriate under the Lease, with the following exception. The amount owed by the Tenant for the period April 1, 2011 to March 1, 2012 should be reduced by the security deposit. Accordingly, when the security deposit is applied and the amount owed by the Tenant is reduced to $23,988, the monthly amount owed for interest is $145, rather than $211. That reduction of $67 per month, for twelve months, reduces the amount of interest owed from $3,601 to $2,797.
In sum, I find that the total amount owed by the Tenant to the Landlord under the Lease is $57,483. ($22,000 + $12,988 + $19,698 +$2,797). From that amount, the security deposit of $11,000 must be applied, leaving the amount owed as $46,483.
IV.Attorneys Fees
The Landlord seeks to recover the attorney fees it has incurred in connection with the Tenant’s default on the amounts owed under the Lease. Under the so-called American Rule, absent a contractual right to recover attorney fees or a statutory basis such as G.L.c. 93A, the Landlord must bear the burden of its own attorney fees and costs incurred to pursue a breach of contract action.
The Landlord, however, points to paragraph 14 of the Lease in support of its claim to receive reasonable attorney fees.
The interpretation of a written contract or lease is a question of law to be determined by the court. Lumber Mutual Insurance Co. v. Zoltek, Corp., 419 Mass. 704, 707 (1995). When making that determination, the court must review the language of the contract in the context of the contract as a whole. Starr v. Fordham, 420 Mass. 178, 190 (1995). Upon close review of the Lease in this case, it is apparent that the language of the Lease does not entitle the Landlord to recover attorney fees incurred in connection with pursing the Tenant upon a default.
Paragraph 13 of the Lease, entitled “Default by Subtenant,” defines the remedies available to the Landlord upon default. There is no provision in paragraph 13 for recovery by a Landlord of its attorney fees. In addition, despite detailed provisions in the Lease with respect to waiver of jury trial, governing law, entire agreement, etc., all drafted by the Landlord, there is no express provision for recovery of attorney fees when the Landlord must take legal action against the Tenant. The absence of such a provision in the “default” paragraph strongly suggests that the parties did not intend recovery of attorney fees as a remedy to the Landlord in a collection action against the Tenant.
Paragraph 14 of the Lease is labeled an “indemnily” provision. Specifically, subparagraph (b) provides that the:
*505 Subtenant shall indemnify, defend (with counsel satisfactory to Sublandlord), protect and hold harmless Sublandlord and Landlord, and their respective partners, officers, agents, servants, employees and independent contractors from and against any and all loss, costs, damage, expense and liability (including, without limitation, court costs and reasonable attorneys fees) incurred in connection with or arising from: (i) any default by Subtenant in the observance or performance of any term, covenant, or condition of this Sublease on Subtenant’s part to be observed or performed; (ii) the use of occupancy of the Sublease Premises by Subtenant or any person claiming by, through or under Subtenant; (iii) the condition of the Sublease Premises or any occurrence or happening in the Sublease Premises from any cause whatsoever; and (iv) any act, omission or negligence of Subtenant or any person claiming by, through or under Subtenant, or of the contractors, agents servants, employees, visitors or licensees of Subtenant or any such person, in, on or about the Sublease Premises or the Building.
Read in context with the entire Lease, there is no doubt that this provision applies to losses, including attorney fees, incurred by the Landlord as a result of a claim by a third party against the Landlord. The reference to protecting, defending and holding the Landlord harmless evidences this intent of the subparagraph, as well as the enumeration of the types of acts, such as negligence, by the tenant, that could give rise to the obligation to indemnify. This subparagraph 14(b) does not provide a right to recover attorney fees incurred in connection with pursuing the Tenant for unpaid rent. The Landlord’s claim for attorney fees is denied.
V. Claims Under Mass. G.L.c. 93A
Both the Landlord and the Tenant assert claims against each other for unfair and deceptive trade practices in the conduct of their business in violation of Mass. G.L.c. 93A, §11. Neither party has proved the level of misconduct by the other to sustain such a claim. The claims are dismissed.
In determining whether a party’s conduct is unfair or deceptive under the statute, the Court must consider whether the conduct lies within at least the penumbra of some common law, statutory, or other established concept of unfairness, and whether it is immoral, unethical, oppressive or unscrupulous. Massachusetts Employers Insurance Exchange v. Propac-Mass., Inc,. 420 Mass 39, 42 (1995). As described at the outset of this memorandum, the dispute here is a garden variety default by the Tenant giving rise to the Landlord’s actions to protect itself as a result of the default. The conduct here, by either side, does not rise to the level of a c.93A violation.
The Landlord claims that the tenant intentionally refused to pay amounts owed even though it had the money in a bank account to pay. This assertion amounts to a typical breach of contract claim. No unfair or deceptive act by the Tenant had been proved. Atkinson v. Rosenthal 33 Mass.App.Ct. 219, 225-26 (1992) (even an intentional default by commercial tenant is not enough to constitute a c.93A violation without proof of an “extortionate quality” to the conduct).
The Tenant’s counterclaim for violation of c. 93A arises entirely from the conduct of the Landlord in commencing this action in June 2010 and obtaining an ex-parte order for trustee process in the amount of $70,000. The Tenant alleges that the Landlord made false statements to the court in order to obtain the order for the amount of $70,000. Specifically, because the Landlord included future rents, not yet due under the Lease, in its calculation of the amount the Tenant was allegedly “indebted” to the Landlord as a ground for the trustee process, the Tenant claims the Landlord is liable under c.93A. The Tenant’s theory is flawed on both the facts and the law.
First, as a factual matter, the record reflects that there was no deceptive conduct by the Landlord. The verified complaint and motion for approval of ex-parte trustee process accurately stated the fact that the Tenant had not paid rent for three months and that such rent was $5,500 per month. The complaint also alleges that there will be “continued lost rent.” Pursuant to Mass.R.Civ.P. 42, a plaintiff may seek trustee process “to secure satisfaction of the judgment for damages and costs which the plaintiff may recover.” It is readily apparent from the documents that the Landlord was seeking recovery for unpaid rent and rent that, for good reason, the Landlord anticipated would be unpaid throughout the Lease term.
In any event, the Tenant was able to vacate the trustee process within a matter of weeks upon paying one month of the overdue rent and receiving from the court an order (a) to pay the remaining two months of overdue rent “immediately” and (b) to pay the base rent in the future “as it becomes due.”
Second, as a matter of law, the Landlord’s conduct in obtaining trustee process does not rise to the level of a c. 93A violation without proof of some ulterior motive. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991) (a civil action is wrongful if its initiator does not have probable cause to believe the suit will succeed and is acting primarily for a purpose other than that of properly adjudicating his claims). See also, Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 777-79 (1986) (litigation conduct that is unfair or deceptive may be a violation of c. 93A when it is motivated by ulterior purpose to gain a competitive advantage over the opposing party). Here, the Landlord commenced this action and sought trustee process for the legitimate purpose of collecting amounts under the Lease. The Tenant offers no proof of an ulterior motive. Thus, the Tenant’s counterclaim fails.
*506 ORDER
For the reasons stated above, judgment shall enter for the Landlord (plaintiff) in the amount of $46,483. No statutory prejudgment interest shall be added to that amount. The judgment will accrue postjudgment interest at the statutory rate. The counterclaim of the Tenant (defendant) is dismissed. Costs shall be awarded to the plaintiff.

The Landlord either voluntarily dismissed or did not pursue the various counts of its complaint, other than breach of contract and violation of c. 93A.